George RIOS, Eugene C. Jenkins, Eric O. Lewis and Wylie B. Rutledge, Plaintiffs,

v.

ENTERPRISE ASSOCIATION STEAMFITTERS LOCAL UNION NO. 638 OF U. A., Mechanical Contractors Association of New York, Inc. and the Joint Steamfitting Apprenticeship Committee of the Steamfitters' Industry Educational Fund, Defendants.

No. 71 Civ. 847.

United States District Court, S. D. New York. March 24, 1971.

Dennis R. Yeager, E. Richard Larson, New York City, for plaintiffs; Douglas D. Broadwater, George Cooper, New York City, of counsel.

Peter Kaiser, New York City, for defendants, Local Union No. 638 and Union Members of Apprenticeship Committee; John A. Mcavinue, Jr., New York City, of counsel.

Breed, Abbott & Morgan, New York City, for Mechanical Contractors Assn. and Employer Members of Apprenticeship Committee; Lloyd V. Almirall, Thomas A. Shaw, Jr., Michael C. Devine, New York City, of counsel.

## OPINION

FRANKEL, District Judge.

The four plaintiffs, three black and one Puerto Rican, charge that they have suffered denials of employment and lost other advantages of union membership because of unlawful discriminations on account of race and national origin. They bring this suit for themselves and for the class of persons they describe as being similarly situated. Their complaints appear to be primarily against defendant Union, Enterprise Association Steamfitters Local Union #638 of U. A., but they charge wrongs also by defendant Mechanical Contractors Association of New York, Inc., an employer group, and by defendant Joint Steamfitting Apprenticeship Committee of the Steamfitters' Industry Educational Fund, an employer-union entity. As substantive bases for their claims, plaintiffs invoke the relatively ancient and general civil rights

provisions of 42 U.S.C. §§ 1981 and 1983, along with Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The Court's jurisdiction is rested upon 28 U.S.C. §§ 1343, 2201 and 2202.

Simultaneously with the filing of their complaint, plaintiffs brought by order to show cause a motion for a preliminary injunction. In addition to affidavits and exhibits from both sides, the court has heard the live testimony of five witnesses called by plaintiffs, one of whom was also deposed between the noticing and the return date of the motion. Defendants offered no such additional evidence. Upon the record thus made, and solely for the question of temporary relief now decided, the court states the following findings and conclusions:

Defendant Local Union serves as a collective bargaining representative for steamfitters employed in the construction industry in the New York City metropolitan area. By its agreement with defendant Contractors Association, the Union engages to "furnish to the members of the * * * Association all the competent steamfitters and apprentices which they demand * * *." To implement this arrangement, the Union keeps its "books of membership" open for transfers of workers from other locals, and supplies the employer group with current membership lists. In addition to these explicit arrangements, business agents of the Union serve the members who need jobs, at least by supplying information as to openings. Moreover, the Union purports to screen people for competence in accepting them for membership, so that the status of member serves in some measure as a certification of suitability to prospective employers. Finally, while it is not critical for present purposes and therefore not necessary to pursue in detail, there is evidence of union pressure upon both contractors and workers to discourage the employment of non-union men for jobs as steamfitters.

It seems plain, in sum, that membership in defendant Union is a substantial help, and non-membership a substantial detriment, in obtaining and keeping employment in the steamfitting industry. And this is the central concern of three of the four plaintiffs now before the court who contend that they are qualified and experienced as steamfitters, but denied the benefits of union membership because of their race or national origin. George Rios is of Puerto Rican ancestry; Eugene C. Jenkins and Eric O. Lewis are Negroes. They range in age from 30 to 37. All three have had substantial training as steamfitters and plumbers, mainly on the job, and, in Jenkins's case, in school and in military service as well. All three have worked for substantial periods as steamfitters, proving themselves competent at their work.

While these three plaintiffs have worked in the steamfitting industry, and were reported to be so employed at the time of our evidentiary hearing, they have suffered, and they face, periods of unemployment which would in all probability have been (or will be) shortened by the advantages of information and other assistance flowing from membership in defendant Union. They have sought such membership in vain. The Union, as is reflected dramatically in its overwhelmingly white and non-Spanish membership [1] contrasted with the composition of the working population in its area, has followed a course of racial discrimination over the years. Cf. Parham v. Southwestern Bell Telephone Co., 433 F.2d 421, 426 (8th Cir. 1970), and cases cited therein; Jones v. Lee Way Motor Freight, Inc., 431 F.2d 245 (10th Cir. 1970); United States v. Hayes International Corporation, 415 F.2d 1038, 1043 (5th Cir. 1969). The same animus, now plainly unlawful if it was ever otherwise, has prompted the denial of membership to plaintiffs Lewis, Rios and Jenkins. The Union has repeatedly failed to respond to the requests for applica-

1. Of approximately 4,000 persons in the building trades branch of the Union, 28 are black and 13 have Spanish surnames.

tion forms or for admission made by these three plaintiffs. Plaintiff Lewis, when he went to the office of defendant Mechanical Contractors Association of New York, Inc., was told that he did not meet union qualifications.[2] But before this court, the defendants have made no attempt to rebut the strong evidence from plaintiffs and their past and present employers that they are fully qualified to perform a steamfitter's job.[3] Further evidence of the Union's discriminatory behavior appeared in the uncontradicted testimony of Frederick Clarke, a contractor for whom plaintiffs Rios, Jenkins and Lewis were employed as steamfitters in 1970. Clarke testified that a business agent from defendant Union visited his Harlem work site in April 1970, questioned Rios about not having a Union book, and told Clarke that he had to hire Union men. Clarke asked the Union agent to issue permits for the non-union men then working at the site, but there was never any action on this request, although Clarke himself eventually signed a collective bargaining agreement with the Union.

The record as it is now made is convincing that the Puerto Rican ancestry of Rios and the skin color of Lewis and Jenkins in fact explain their exclusion from the Union.

It is not disputed that these plaintiffs have duly and meticulously pursued the administrative remedy of attempted conciliation provided by Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e–5. They have received requisite letters from the Equal Employment Opportunity Commission authorizing the institution of the present suit. 42 U.S.C. § 2000e–5(e). And they have, as the foregoing findings show, demonstrated a large probability of ultimate success in proving the violations Congress has denounced.

The Union, on the other hand, reveals, and indeed insists upon, factors that tilt the balance of the equities still farther toward the plaintiffs. The Union denies that it operates a hiring hall. It goes on to urge, unsuccessfully but revealingly, that union membership is not at all relevant to the obtaining of employment,

2. According to his affidavit, in uncontradicted portions which the court credits, Lewis was told that "to join the Union I would have to complete the apprenticeship program. I was also told that I probably wouldn't want to take the apprenticeship program since the pay was low." In contrast with that pattern of deterrence Union President Tom Murray stated in his deposition that only one-third of the Union's members have gone through the apprenticeship program.

3. Defendants argue that, at best, plaintiffs are experienced as plumbers not steamfitters. The evidence shows, however, that plaintiffs have substantial experience doing both plumbing and steamfitting work. Moreover, on the present record it appears that the two jobs are similar and that a plumber is qualified to do most if not all the work of a steamfitter. Defendants have offered no evidence which refutes the conclusion on this point of plaintiffs' experienced witness.

Section 158 of the Union Constitution requires an applicant for membership to show that he has had "at least five (5) years actual practical working experience in the *plumbing* [emphasis added] and pipefitting industry." It is questionable whether plaintiffs Lewis and Rios could meet this qualification, although plaintiff Jenkins would appear to. However, while the argument is made (and rejected by this court) that plaintiffs are not experienced enough as steamfitters, there has been no suggestion on the Union side that this five-year provision of the Union Constitution played any part in the exclusion of any of these plaintiffs. In addition, in an industry where racial discrimination has been practiced for years, a rigid five-year work experience requirement which perpetuates the effects of prior discrimination may well violate Title VII. Cf. Local 53 of Int. Ass'n of Heat & Frost I. & A. Wkrs. v. Vogler, 407 F.2d 1047, 1054–1055 (5th Cir. 1969); Dobbins v. Local 212, International Bro. of Elec. Wkrs., 292 F.Supp. 413, 445 (S.D.Ohio 1968); United States v. Sheet Metal Wkrs. Int. Ass'n, Local U. 36, 416 F.2d 123, 133 (8th Cir. 1969); Local 189, United Papermak. & Paperwork. v. United States, 416 F.2d 980 (5th Cir. 1969), cert. denied 397 U.S. 919, 90 S.Ct. 926, 25 L.Ed.2d 108 (1970); Parham v. Southwestern Bell Telephone Co., 433 F.2d 421, 426–427 (8th Cir. 1970).

this being handled on his own by each man (there are said to be no woman steamfitters, and this is not here in question). Union counsel suggested in argument, however, that the worth of the Union's imprimatur will suffer if unqualified workers are "held out" as competent steamfitters by virtue of their membership. Thus, the Union essentially concedes that membership may be of substantial utility in gaining employment, if only because employers interpret membership as a sign of competence. There is, in all these circumstances, no reason for serious concern about the Union's reputation, since the indications are that Rios, Jenkins and Lewis are amply qualified. In sum, the dubious and speculative injuries to the Union from a temporary injunction are solidly outweighed by the harm the three qualified plaintiffs would suffer from its denial. The preliminary relief they seek will be granted. Cf. Local 53 of Int. Ass'n of Heat & Frost I. & A. Wkrs. v. Vogler, 407 F.2d 1047 (5th Cir. 1969); United States v. Hayes International Corporation, 415 F.2d 1038 (5th Cir. 1969).

■ Different questions are presented, and a different result is reached, in the case of the remaining plaintiff, Wylie B. Rutledge. Rutledge is 21 years old, black, and, according to his affidavit, possessor of a high school equivalency diploma. He has for some time been enrolled in a program for recruitment and training of young minority group workers for jobs in construction industry apprenticeship programs. In November, 1969, he took and passed an examination given by the elevator constructors' union. He went to work as an apprentice for two months thereafter. Then, his affidavit says: "I was not allowed to complete the apprenticeship program of the elevator constructors because I was dismissed by two employers, allegedly because I missed and was late for work too frequently." His affidavit also describes some miscellaneous work experience unrelated to the construction industry and to the issues in this case.

In January, 1970, Rutledge received notice of a forthcoming examination for admission to defendant Apprenticeship Committee's apprenticeship program. The examination, originally devised and run for the Committee by New York University, and administered since 1967 by Stevens Institute of Technology, embraces four tests—in "verbal meaning," "number facility," "mechanical comprehension," and "spatial relations." Rutledge enrolled in a class run by the Workers Defense League to help prepare for the examination, which he then took on January 31, 1970. In his affidavit he says:

"I took the test at the scheduled time and I believe I received passing grades on all aspects of that test. I believe that I was not admitted because the program accepts only a small number of the applicants."

Contrary to Rutledge's assertion, the record before the court shows that he failed a critical portion of the examination, and was so informed over a year ago on February 20, 1970. As the notice to him stated, the requirement was to score above the lowest 25% of those taking the examination. Rutledge met the requirement with respect to verbal meaning, number facility, and spatial relations—the three components which, in the order listed, are surfacially most suspect as subjects for testing prospective steamfitters. He fell at the 18th percentile, however, on mechanical comprehension.

The record is less than complete or completely satisfying with respect to the test and its effect. The picture may change markedly after the case is fully tried. Upon the present record, however, there is no evidence that the test operates or has operated "to disqualify Negroes at a substantially higher rate than white applicants * * *." Griggs v. Duke Power Company, 401 U.S. 424, p. 426, 91 S.Ct. 849, p. 851, 28 L.Ed.2d 158. Since plaintiff Rutledge does not provide the basis for any finding that the test is "discriminatory in operation"

(*id.* at 431, 91 S.Ct. at 853), there may be no need to assess in detail whether defendants have met the burden of showing that test performance is related to job performance. *Id.* at 432, 91 S.Ct. at 854; 42 U.S.C. § 2000e–2(h); 35 Fed. Reg. 12333 (Aug. 1, 1970). Even as to that, however, the present record weighs against Rutledge. The evident relevance of mechanical comprehension to the work in question, the buttressing of this point by a witness *for plaintiffs,* and the sponsorship of the examination all indicate that it is fairly and aptly designed for a legitimate purpose. Whether defendants must show more to meet the burden when the case has been fully tried is a matter to consider later.[4]

In short, the most basic and decisive factor against Rutledge on the present motion is the weakness of his case on the merits. He has other difficulties as well. Rutledge knew or should have known over a year ago that he had been rejected on the ground of his insufficient test score. He evidently did nothing until December 14, 1970, when he complained to the New York State Division of Human Rights. Then, on February 16, 1971, he complained to the United States Equal Employment Opportunity Commission, long after expiration of the 210-day period prescribed by 42 U.S.C. § 2000e–5 (d). Having tardily invoked that remedy, he suddenly moved with an ill-timed burst of speed, joining in this suit before expiration of the 60-day period and the Commission notification required by 42 U.S.C. § 2000e–5(e) and applicable regulations.[5]

Thus, having come finally to seek relief under Title VII of the Civil Rights Act of 1964, plaintiff has managed, at least until now, to generate large, possibly decisive, procedural obstacles to his success in this enterprise. Rutledge argues, however, that he is not confined to Title VII, and that his claim may be sustained under older sections of Title 42, namely §§ 1981 and 1983. Whether or not it will ultimately prevail in this case, there is substance in the contention that either or both of these statutes may now be seen to outlaw racial discrimination in employment. But while the existence of Title VII, with its specific and detailed administrative remedies, does not appear to preclude the use of the alternative statutes, Sanders v. Dobbs Houses, Inc., 431 F.2d 1097 (5th Cir. 1970), cert. denied 401 U.S. 948, 91 S.Ct. 935, 28 L.Ed.2d 231 (March 1, 1971); cf. Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 237, 90 S.Ct. 400, 24 L.Ed.2d 386 (1970), it has been held that a plaintiff may have to present some reasonable justification for bypassing the administrative forum, Waters v. Wisconsin

4. While defendants may have to demonstrate more upon a full record—for example, a more particularized relationship between the written test and "successful performance of the jobs for which it [is] used," and perhaps even a "study" demonstrating the connection, Griggs v. Duke Power Company, *supra* at 853—there are also other things potentially adverse to Rutledge. He claims, and ought to be held to the claim, that he has the equivalent of a high school education. For what it may be worth, the fairness of putting Rutledge to a written test may differ from a case like *Griggs,* arising in an environment of segregated schooling. *Id.* at 5–6. But cf. Taylor v. Board of Education of City School District of New Rochelle, 191 F.Supp. 181 (S.D.N.Y.), aff'd. 294 F.2d 36 (2d Cir.), cert. denied 368 U.S. 940, 82 S.Ct. 382, 7 L.Ed. 339 (1961). In any event, it should be noted that since Rutledge claims he has a high school equivalency diploma, he is not in a position to suffer whatever discriminatory effects might follow from the requirement that an apprenticeship applicant submit a high school diploma or equivalency certificate. Parham v. Southwestern Bell Telephone Co., 433 F.2d 421, 427–428 (8th Cir. 1970).

5. 42 U.S.C. § 2000e–5(e) provides that a civil action may be brought thirty days after a charge is filed with the Commission, "except that * * * such period may be extended to not more than sixty days upon a determination by the Commission that further efforts to secure voluntary compliance are warranted * * *." The Commission has issued regulations permitting it to consider and attempt conciliation in all cases for the full 60 days after the filing of a charge. 29 C.F.R. § 1601.25a.

Steel Works of International Harvester Company, 427 F.2d 476, 481, 487 (7th Cir.), cert. denied sub nom. United Order of Bricklayers and Stone Masons, Local 21 v. Waters, 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970); State of Washington v. Baugh Construction Co., 313 F.Supp. 598 (W.D.Wash.1969); cf. Young v. International Telephone & Telegraph Co., 438 F.2d 757 (3rd Cir., 1971); but see Sanders v. Dobbs Houses, Inc., *supra*. And even if the complete bypassing of the EEOC may be allowable, it does not follow that a plaintiff may invoke the help of that agency and then short-circuit its efforts by premature resort to the federal court.[6]

The shape of Rutledge's case on the preliminary motion now before the court makes this a particularly unsuitable occasion for allowing suit while the procedures of the EEOC remain to be completed. As things appear thus far, Rutledge will not succeed in showing racial discrimination as a matter of fact. It will be time enough if he ultimately proves such conduct, and if the obvious and specific remedies of Title VII should then be held to be foreclosed, to consider whether the suggested alternatives are available to him as a matter of substantive law.

For the reasons stated, the motion of plaintiff Rutledge will be denied. A preliminary injunction will issue in favor of plaintiffs Rios, Jenkins and Lewis,[7] restraining defendant Union from denying them union membership on terms and conditions, and with rights, privileges and responsibilities, equal to those of all other members enjoying the status of full journeymen, without regard to race or national origin.[8]

Settle order on notice.

6. The cases cited above discuss the application of 42 U.S.C. § 1981 to claims of racial discrimination by unions or private employers. Plaintiffs cite no authority supporting their reliance upon 42 U.S.C. § 1983, and there is no need at this stage to explore the possible application of that statute.

7. The four plaintiffs, despite the different situation of Rutledge, undertook to sue on behalf of a single "class." In the brief time from the filing of suit to the hearing of the instant motion, there has been no proceeding under Fed.R.Civ.P. 23(c) and our local Civil Rule 11A to determine whether the suit may be so maintained and, if so, how the alleged class is to be defined. It seems orderly and, indeed, necessary, therefore, to rule only with respect to the named plaintiffs, postponing for another time any possible impact upon others who may turn out to be similarly situated.

8. Plaintiffs' prayer sought to compel the Union "to place them in the highest hiring hall referral category and * * * to refer them for steamfitting work as if they were full journeymen in the highest hiring hall referral category." There is, at least thus far, no showing that the Union operates what may literally be called a "hiring hall." However, there is evidence, sketched above, of specific and measurable union influence upon the getting and keeping of jobs. It may well be—and the Union should know best —that this impact is broader and more concretely detailed than has thus far appeared. Considering the nature of the subject matter, the distribution of the pertinent knowledge, and the relatively precise focus upon employment and employment opportunities, it seems fitting that the injunction should be formulated in terms that require the Union simply to give plaintiffs no less of the things in question than it gives to other members. Within these directions there should be enough from which the parties can propose a decree fully comprehensible to those who must obey it. Cf. International Longshoremen Ass'n, Local 1291 v. Philadelphia Marine Trade Assn., 389 U.S. 64, 76, 88 S.Ct. 201, 19 L.Ed.2d 236 (1967); Developments in the Law —Injunctions, 78 Harv.L.Rev. 994, 1066 (1965). Of course, the court does not sit in equity to trap the innocent unwary. If there are genuine problems of construction, they may be tendered in all good conscience for such declaratory guidance as may be necessary in the absence of an agreed course charted in good-faith consultations between the parties. See Regal Knitwear Co. v. National Labor Relations Board, 324 U.S. 9, 15, 65 S.Ct. 478, 89 L.Ed. 661 (1945).