UNITED STATES of America,
Plaintiff,

v.

LOCAL 638 et al., Defendants.

SHEET METAL WORKERS INTERNA-
TIONAL ASSOCIATION, LOCAL UN-
ION NO. 28, Third-Party Plaintiff,

v.

NEW YORK STATE DIVISION OF
HUMAN RIGHTS, Third-Party
Defendant.

SHEET METAL WORKERS (LOCAL
UNION NO. 28) JOINT APPRENTICE-
SHIP COMMITTEE AND TRUST,
Fourth-Party Plaintiff,

v.

NEW YORK STATE DIVISION OF
HUMAN RIGHTS, Fourth-Party
Defendant.

No. 71 Civ. 2877.

United States District Court,
S. D. New York.

Jan. 3, 1972.

Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., by Joel Harris, and Steven J. Glassman, Asst. U. S. Attys., for the United States.

Peter Kaiser, New York City, for defendant Local 638.

Breed, Abbott & Morgan, New York City, for defendant Mechanical Contractors Association of New York by Edward Shaw, New York City, of counsel.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

BONSAL, District Judge.

### FINDINGS OF FACT

I. *Background*

1. Local 638 is a labor union whose territorial jurisdiction consists of the

5 boroughs of the City of New York and Nassau and Suffolk counties (Tr. 16; Gov't Ex. 1–p. 5).

2. Local 638 is a member of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry (Tr. 23).

3. Local 638 has two branches—a construction or A branch whose members do mainly construction work and a metal trades or B branch whose members work in shops and do repair work (Tr. 15–16; Gov't Ex. 1–pp. 4–5).

4. At the present time, there are approximately 3850 journeymen members of the A branch, of whom 31 are non-white (Tr. 16), and 2800–3000 members of the B branch, of whom approximately 500 are non-white (Tr. 16; Gov't Ex. 1–pp. 5, 8).

5. There were no non-white journeymen members of the A branch until 1967 (Gov't Ex. 15–3A(3) and (4)).

6. In the past, Local 638 has discriminated against minority workmen in admitting members to the A branch.

7. Members of the A branch have a higher hourly rate of pay than members of the B branch (Tr. 20).

8. Local 638 has 15 officers and eleven business agents, all of whom are white (Tr. 17; Gov't Ex. 1–p. 8).

9. The Mechanical Contractors Association of New York, Inc. ("MCA") is a trade association of heating, ventilating and air conditioning contractors in the New York area (Tr. 58).

10. MCA has approximately 60 members who employ members of Local 638. (Tr. 59).

II. *Membership Requirements*

11. The only operative requirements for membership in the A branch are that each applicant must have at least 5 years of practical working experience in the plumbing and pipe fitting industry and must be of good moral character. (Gov't Ex. 2–sec. 158, 162).

12. Procedurally, applicants to the A branch send letters to the union stating their qualifications, which letters are re- viewed by a committee composed of three of the Union's officers (Gov't Ex. 1–p. 13). These applications are kept on file (Tr. 22) and when additional members are needed in the union—a determination which is based upon the demand for labor (Tr. 21)—applicants are called down, interviewed and, if they have the necessary qualifications, accepted (Tr. 20–1).

13. The union's application process is designed to keep the union membership from being flooded (Tr. 487), by admission of only a small number of new members; this ensures the existence of a shortage of A men and tends to give them job security and high wages.

III. *Advantages of A Branch Membership*

14. Being a member of the A branch is a substantial aid in obtaining a job as a construction steamfitter in the territorial jurisdiction of Local 638 (Tr. 141; 235; 283).

15. Being a member of the A branch is a prerequisite to obtaining job security and preventing early lay-offs. (Tr. 101, 109, 235, 251, 270, 283, 302).

16. Another advantage of A branch membership is the greater opportunity for advancement (Tr. 128–30).

17. A fourth advantage of A branch membership is the greater opportunity to earn overtime pay (Tr. 270; 501–2).

IV. *Shortage of Men in A Branch*

18. In the post-war era, there has been a shortage of construction steamfitters in the New York area (Tr. 152, 171–2, 182, 197–9, 357, 464, 528) as well as a shortage of welders (Tr. 152, 172).

19. As a result of said shortage of manpower, the employers have been required to expend substantial monies for overtime (Tr. 153, 172, 468).

20. In addition, the union has referred B men to work as construction steamfitters in its jurisdiction (Gov't Ex. 1–pp. 27–8, 35).

21. At present there are at least 75 minority members of the B branch and approximately 100 minority non-union men who are working as construction

steamfitters in the jurisdiction of Local 638 (Tr. 75–8; Gov't Ex. 7, 8).

22. The minority workmen presently employed as construction steamfitters receive A scale wages. (Gov't Ex. 1–p. 11).

### V. *Minority Workmen and Their Qualifications*

23. The Joint Apprenticeship Program of the Workers Defense League ("WDL") is a non-profit organization funded by the U. S. Department of Labor whose purpose is to recruit and place minority construction workers (Tr. 212).

24. Last summer the WDL, which is the recognized authority for profession recruitment of minorities in the construction business (Tr. 70–1) recruited one hundred minority workmen who were placed in jobs as construction steamfitters by members of the MCA (Tr. 70).

25. Representatives of the employers reviewed the background of these men (Tr. 71–2), all of whom had at least five years experience in the pipefitting industry. (Tr. 83–4)

26. These minority workmen were tested by the recognized testing authorities to determine who could weld (Tr. 72–3) and, although these men were not given the normal cram course (Tr. 75), 25 men were certified and another 25 scored high on the test (Tr. 73).

27. The fifty workmen who scored well on the test were given welding jobs and the other men were employed as steamfitters by members of MCA (Tr. 73–4).

28. The minority workmen (B branch members and non-union) who are presently employed as construction steamfitters are doing the same kind of work as members of the A branch on their respective job sites (Tr. 100, 125, 139, 154, 235, 269, 281, 301).

29. Many of said minority workmen have far more than 5 years experience in the pipefitting industry (Tr. 83, 99, 107, 121, 137, 231, 248, 298, 499).

30. The employers find these 169 minority workmen on the whole to be as competent as A men (Tr. 154, 156–7, 172, 194, 207) and wish to keep them on (Tr. 13).

### VI. *Union Membership for Minorities*

31. The 169 minority workmen desire to join the A branch of Local 638 (Tr. 101, 109, 128, 141, 234, 251, 283, 302).

32. A number of the minority workmen have applied for membership in the A branch (Tr. 102, 130–1, 141–2, 270–1, 302–3; Gov't Ex. 10, 12, 13) but none have become members (Tr. 101, 128–132, 140–1, 270–1, 302).

33. Others have not applied for A branch membership because they believed such an application would be useless (Tr. 109, 235).

34. All of the minority workmen meet the requirements to become members of the A branch.

35. The union's denial of membership in the A branch to these 169 minority workmen constitutes a discrimination based upon race and national origin.

### CONCLUSION OF LAW

1. Local 638 is a labor organization within the meaning of 42 U.S.C. § 2000e (d) and is engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 2000e(e).

2. The Court has jurisdiction over this action by virtue of 42 U.S.C. § 2000e et seq. The Attorney General is authorized under the Civil Rights Act of 1964 to institute suit to enjoin a pattern or practice of discrimination and request such relief as may be necessary to insure the full enjoyment of rights described in Title VII. 42 U.S.C. § 2000e–6(a).

3. The government has established a *prima facie* case that defendant Local 638 has pursued a pattern and practice of conduct with respect to employment opportunities in the construction industry which has denied minorities the same opportunities available to whites. Parham v. Southwestern Bell

Telephone Co., 433 F.2d 421 (8th Cir. 1970); Jones v. Lee Way Motor Freight, Inc., 431 F.2d 245 (10th Cir. 1970); United States v. Dillon Supply Company, 429 F.2d 800 (4th Cir. 1970); Local 189, United Papermakers and Paperworkers v. United States, 416 F.2d 980 (5th Cir. 1969), cert. denied, 397 U.S. 919, 90 S. Ct. 926, 25 L.Ed.2d 108 (1970); United States v. Sheet Metal Workers, Local 36, 416 F.2d 123 (8th Cir. 1969); United States by Mitchell v. Hayes International Corporation, 415 F.2d 1038 (5th Cir. 1969); Rios v. Enterprise Ass'n Steamfitters Local U #638 of U.A. et al., 326 F.Supp. 198 (S.D.N.Y.1971).

■ 4. The defendant Local 638's membership policies, which the Government has established as having the effect of perpetuating past discrimination, are unlawful. See United States v. Bethlehem Steel Corp., 446 F.2d 652 (2d Cir. 1971); Jones v. Lee Way Motor Freight, Inc., *supra;* United States v. I. B. E. W. Local No. 38, 428 F.2d 144 (6th Cir. 1970) cert. denied, 400 U.S. 943, 91 S.Ct. 245, 27 L.Ed.2d 248 (1970); Local 189, United Papermakers and Paperworkers v. United States, *supra;* United States v. Sheet Metal Workers, Local 36, *supra;* Local 53, Int'l Ass'n of Heat & Frost Insulators and Asbestos Workers v. Vogler, 407 F.2d 1047 (5th Cir. 1969); Quarles v. Phillip Morris, Inc., 279 F. Supp. 505 (E.D.Va.1968).

■ 5. The government has shown probability of ultimate success on the merits, that the harm which will occur if the preliminary injunction is not issued far outweighs the harm to the union and the fact that the granting of relief herein is in the public interest. Hence, the government is entitled to preliminary relief in this case. See cases cited in the Government's Memorandum of Law submitted in support of this motion, dated November 9, 1971.

## ORDER

Plaintiff, the United States of America, having moved by Order To Show Cause dated November 9, 1971 for the issuance of a preliminary injunction enjoining defendant Local 638, Enterprise Association, etc. ("Local 638") from denying to qualified minority workmen union membership on terms and conditions, and with rights, privileges and responsibilities equal to all other workmen enjoying journeyman status in the Building and Construction Trades Branch of Local 638, without regard to race or national origin, and the Court having heard testimony at hearings commencing on November 26, 1971, and having read and filed the affidavits and exhibits submitted in support of said motion and in opposition thereto; and after due deliberation and after rendering and filing Findings of Fact and Conclusions of Law, it is hereby

Ordered, that the 169 minority workers whose names are set forth on Exhibit A, are hereby granted full journeyman status in the Building and Construction Trades Branch, ("A Branch") of Local 638, with rights, privileges and responsibilities equal to those of all other members enjoying full journeyman status, these rights and privileges to include the services provided by Local 638 in assisting members of the A Branch in obtaining and retaining employment with steamfitting industry employers in New York City and Long Island; and it is further

Ordered, that Local 638 shall, within one week of the date of this Order, inform each of the minority workers whose name is set forth on Exhibit A, in writing, of his A Branch status as hereinabove set forth and of the provisions for payment of the initiation or transfer fee and dues, and of the amounts and dates such payments are due, as hereinafter set forth; and it is further

Ordered, that the initiation or transfer fees payable by the said minority workers shall be those charged other members of the A Branch similarly situated and presently in force, and shall be payable at the union office, 841 Broadway, New York City, in equal weekly installments over a period of 10 weeks commencing two weeks from the date of

this Order, for which receipts will be given by Local 638; and it is further

Ordered, that, as of the date of this Order, said minority workers shall be liable to pay the union dues charged to other members of the A Branch similarly situated and presently in force, on the same basis as union dues paid by other members of the A Branch, such payment to commence two weeks from the date of this Order, for which receipts will be given by Local 638 until the formal issuance of the appropriate A-Branch Union Book; and it is further

Ordered, that within 45 days of the date of this Order, or immediately upon payment in full of the aforesaid initiation or transfer fee, whichever shall later occur, Local 638 shall issue or cause to be issued formal membership documentation, including the appropriate A-Branch Union Book, to each of the said minority workers as is issued to all other journeymen members of said A Branch; and it is further

Ordered, that within 30 days of the date of this Order, Local 638 shall have the right, if it deems any of said minority workers to be incompetent, to apply to this Court for an Order striking the name of such allegedly incompetent minority workers from Exhibit A, such application being independent of but not in lieu of the preceding paragraphs of this Order; and it is further

Ordered, that within 60 days of the date of this Order, Local 638 shall submit to the Court proposed objective qualifications and procedures, including a description of any practical and written examination(s), for admission of workers, regardless of race or national origin, to full journeyman status in the A Branch which procedures shall take effect upon approval by the Court, and shall be applied to all applicants to the A Branch during the pendency of this action; and is further

Ordered, that the Court retains jurisdiction for the purpose of effectuating this decree.