Mary P. **LAFFEY** et al.,
Plaintiffs,

v.

**NORTHWEST AIRLINES, INC.,**
Defendant.

Civ. A. No. 2111–70.

United States District Court,
District of Columbia.

April 3, 1974.

**1384**

Michael H. Gottesman, and Dennis D. Clark, of Bredhoff, Barr, Gottesman, Cohen & Peer, Washington, D. C., for plaintiffs.

Gilbert Feldman, of Kleiman, Cornfield & Feldman, Chicago, Ill., for Air Line Stewards and Stewardesses Assn., Intern., Transport Workers Union of America, AFL–CIO, for a portion of the trial, for plaintiffs.

Henry Halladay, and David A. Ranheim, of Dorsey, Marquart, Windhorst, West & Halladay, Minneapolis, Minn., for defendant.

Karl W. Heckman, U. S. Dept. of Labor, appeared for portions of the trial; no evidence was presented by the Department of Labor.

## ORDER

AUBREY E. ROBINSON, Jr., District Judge.

The Court having heretofore issued findings of fact and conclusions of law, 366 F.Supp. 763 and having held therein that defendant Northwest Airlines, Inc., violated the Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, in enumerated respects; and all parties having filed briefs and presented oral argument with respect to the remedy questions; it is by the Court this 3rd day of April, 1974;

Ordered, as follows:

1. GENERAL INJUNCTION—The Defendant Northwest Airlines, Inc., and its officers, agents, employees, successors and all persons or organizations in active concert or participation with it, hereby are permanently enjoined and restrained from discriminating in any aspect of employment of cabin attendants on the basis of sex and from failing or refusing to fully implement, or to participate and cooperate in the implementation of, the provisions set forth in the body of this Order.

2. DEFINITIONS—For purposes of this Order, the following definitions shall apply:

(a) The term "Company" shall refer to Northwest Airlines, Inc.

(b) The term "Union" shall refer to Air Line Pilots Association, or any labor organization which succeeds it as bargaining representative of the Company's cabin attendants.

(c) The term "cabin attendant(s)" shall refer, collectively, to all American-based employees of the Company whose principal duties consist of providing in-flight cabin service, whether denominated stewardess, purser, flight service attendant, steward, or otherwise.

(d) The term "Equal Pay Act plaintiff(s)" shall refer, collectively, to all female cabin attendants employed by the Company who filed timely written consents with this Court, in accordance with 29 U.S.C. § 256, to become parties plaintiff with respect to the Equal Pay Act aspects of this lawsuit.

(e) The term "Title VII plaintiff(s)" shall refer, collectively, to all female cabin attendants employed by the Company at any time on or after July 2, 1965, excluding only those who filed timely written elections with this Court to be excluded from this lawsuit in its entirety.

(f) The term "Equal Pay Act recovery period" shall refer, for each Equal Pay Act plaintiff, to the period commencing three years prior to the date said plaintiff filed a written consent with this Court and ending on the date the Company equalizes wages in accordance with Paragraph 3 of this Order.

(g) The term "salary" shall refer to pay for services performed, as well as such other benefits (e. g. paid leave, life insurance) as are computed on the basis of salary.

## 3. EQUALIZATION OF WAGES— AFFIRMATIVE INJUNCTION

■ (a) *Salary*: Beginning with the date of this Order, the Company shall pay all female cabin attendants the salaries prescribed in the purser pay scale (base pay, and incentive pay if any) of the then-current collective bargaining agreement. The longevity of each female cabin attendant for purposes of applying the purser pay scale shall be her system seniority. Thereafter, the Company shall not reduce the salary of any female cabin attendant below the level to which said purser pay scale entitles her at any given time, her longevity for pay purposes at such time being her system seniority.

(b) *Pensions*: Beginning with the date of this Order, any pension payment made to any female cabin attendant shall be computed as though said female cabin attendant had been classified and paid as a purser throughout the period of her employment as a cabin attendant.

(c) *Lodging*: Beginning with the date of this Order, the Company shall furnish single rooms to all female cabin attendants on layovers, which shall not be inferior in quality to those heretofore provided to male cabin attendants. Thereafter, the Company shall not assign double rooms to any female cabin attendant, nor provide rooms to any female cabin attendant inferior in quality to those heretofore provided to male cabin attendants.

(d) *Uniform Cleaning Allowance:* Beginning with the date of this Order, the Company shall provide a quarterly uniform cleaning allowance to each female cabin attendant in accordance with the following standards as to eligibility and amount:

(i) Eligibility: To be eligible for a uniform cleaning allowance in a particular calendar quarter, she must have been employed as a cabin attendant on the first day of that quarter and she must have been so employed for the last full calendar month preceding such first day of the quarter.

(ii) *Amount*: The amount of the uniform cleaning allowance in each quarter shall be $13 prorated on the basis of the time on payroll as a cabin attendant employee in such quarter.

(e) *Prohibition against reducing wages to comply*: The Company shall not, contrary to 29 U.S.C. § 206(d)(1), reduce the wage rate of any employee in order (a) to accomplish the equalization required by this Paragraph 3 or (b) otherwise to comply with the provisions of 29 U.S.C. § 206(d)(1).

## 4. INJUNCTION AGAINST FUTURE WAGE DISCRIMINATION—

The Company shall not, contrary to 29 U.S.C. § 206(d)(1) or 42 U.S.C. § 2000e–2(a) and (h), discriminate on the basis of sex between cabin attendants by paying wages to cabin attendants at a rate less than the rate at which it pays wages to cabin attendants of the opposite sex for equal work on jobs the performance of which requires equal skill, effort, and responsibility and which are performed under similar working conditions.

■ 5. MONETARY AWARD FOR THE EQUAL PAY ACT VIOLATIONS —The Company shall pay to each Equal Pay Act plaintiff the following monetary amounts:

(a) For each month during her Equal Pay Act recovery period in which she received a salary from the Company for service as a cabin attendant, the difference between the salary actually paid to her (including base pay, foreign flying supplement if any, and incentive pay if

any) and the salary (base pay, and incentive pay if any) which would have been paid to her had she been compensated as a purser with longevity for pay purposes equal to her system seniority.

(b) If she received pension payments during her Equal Pay Act recovery period, the difference between the pension payments made to her and those which would have been made to her had they been computed on the basis of her having been classified and paid as a purser throughout the period of her employment as a cabin attendant.

(c) For each layover during her Equal Pay Act recovery period in which the lodging furnished by the Company required her to share a double room, the difference between one-half the value of the double room actually provided to her and the value of a single room had it been provided to her.

(d) For each calendar quarter from March 1, 1970 until the end of her Equal Pay Act recovery period, a uniform cleaning allowance in accordance with the following standards as to eligibility and amount:

(i) Eligibility: To be eligible for a uniform cleaning allowance in a particular calendar quarter, she must have been employed as a cabin attendant on the first day of that quarter and she must have been so employed for the last full calendar month preceding such first day of the quarter.

(ii) Amount: The amount of the uniform cleaning allowance in each quarter shall be $13 prorated on the basis of the time on payroll as a cabin attendant employee in such quarter.

6. BACKPAY UNDER TITLE VII FOR WAGE DISCRIMINATION AGAINST EQUAL PAY ACT PLAINTIFFS—The Company shall pay backpay to each Equal Pay Act plaintiff who was employed as a cabin attendant at any time between March 28, 1968 and the day preceding the commencement of her Equal Pay Act recovery period, to remedy the pay discrimination visited upon her during said period in violation of Title VII. The amount of backpay for each such Equal Pay Act plaintiff shall be as follows:

(a) For each month between March 28, 1968, and the day preceding the commencement of her Equal Pay Act recovery period in which she received a salary from the Company for service as a cabin attendant, the difference between the salary actually paid to her (including base pay, foreign flying supplement, if any, and incentive pay, if any) and the salary (base pay, and incentive pay, if any) which would have been paid to her had she been compensated as a purser with longevity for pay purposes equal to her system seniority.

(b) For each layover between March 28, 1968, and the day preceding commencement of her Equal Pay Act recovery period, the difference between one-half the value of the double room actually provided to her and the value of a single room had it been provided to her.

7. BACKPAY UNDER TITLE VII FOR WAGE DISCRIMINATION AGAINST TITLE VII PLAINTIFFS WHO ARE NOT ALSO EQUAL PAY ACT PLAINTIFFS—The Company shall pay backpay to each Title VII plaintiff who is not also an Equal Pay Act plaintiff to remedy the pay discrimination visited upon her in violation of Title VII. The amount of backpay for each such Title VII plaintiff shall be as follows:

(a) For each month between March 28, 1968, and the date upon which the Company equalizes wages in accordance with Paragraph 3 of this Order in which she received a salary from the Company for service as a cabin attendant, the difference between the salary actually paid to her (including base pay, foreign flying supplement, if any, and incentive pay if any) and the salary (base pay, and incentive pay, if any) which would have been paid to her had she been compensated as a purser with longevity for pay purposes equal to her system seniority.

(b) If she received pension payments at any time between July 2, 1965, and the date upon which the Company equalizes wages in accordance with Paragraph 3 of this Order, the differences between the pension payments made to her and those which would have been made to her had they been computed on the basis of her having been classified and paid as a purser throughout the period of her employment as a cabin attendant.

(c) For each layover between March 28, 1968, and the date upon which the Company equalizes wages in accordance with Paragraph 3 of this Order, the difference between one-half the value of the double room actually provided to her and the value of a single room had it been provided to her.

(d) For each calendar quarter from March 1, 1970, until the date upon which the Company equalizes wages in accordance with Paragraph 3 of this Order, a uniform cleaning allowance in accordance with the following standards as to eligibility and amount:

(i) Eligibility: To be eligible for a uniform cleaning allowance in a particular calendar quarter, she must have been employed as a cabin attendant on the first day of that quarter and she must have been so employed for the last full calendar month preceding such first day of the quarter.

(ii) Amount: The amount of the uniform cleaning allowance in each quarter shall be $13 prorated on the basis of the time on payroll as a cabin attendant employee in such quarter.

■ 8. WEIGHT: NEGATIVE IN-JUNCTION—The Company shall not:

(a) Weigh female cabin attendants;

(b) Condition the employment of female cabin attendants upon their agreeing that they may be reprimanded, suspended (grounded) or terminated for failure to maintain a prescribed weight;

(c) Prescribe a weight scale to which female cabin attendants are required or expected to adhere;

(d) Reprimand, suspend (ground) or terminate any female cabin attendant because of her weight, unless her weight is such as to render her physically incapable of performing the duties of the job.

9. WEIGHT: AFFIRMATIVE IN-JUNCTION—The Company shall:

(a) Notify all female cabin attendants that it will no longer enforce any weight requirements other than that permitted by Paragraph 8(d) of this Order;

(b) Notify all female cabin attendants who signed agreements conditioning their continued employment upon maintenance of a prescribed weight that such agreements will not be enforced;

(c) Remove from its Cabin Service Manual all materials relating to weight inconsistent with the prohibitions of Paragraph 8 of this Order.

(d) Offer immediate reinstatement, with system seniority intact, to each female cabin attendant terminated on account of weight on or after July 2, 1965;

(e) Immediately restore to flying status each female cabin attendant who is in suspended (grounded) status on account of weight on the date of this Order;

(f) Remove from each female cabin attendant's personnel files all records of warning reprimands, and/or discipline on account of weight; but preserve such records in a central location for so long as is necessary to compute backpay awarded under Paragraphs 10 and 11 of this Order.

10. WEIGHT: BACKPAY: TER-MINATED EMPLOYEES—The Company shall pay to each Title VII plaintiff whose employment was terminated on account of her weight on or after July 2, 1965, backpay for the period between the date of said termination and the date reinstatement is offered in accordance with Paragraph 9(d) of this Order. The amount of backpay shall be the amount of wages she would have earned during said period (adjusted to the purser pay scale to the extent that the

class of which she is a member is awarded backpay for work performed during said period), less the amount earned or earnable with reasonable diligence from other work during said period which would not have been performed had she not been terminated.

11. WEIGHT: BACKPAY: SUSPENDED (GROUNDED) EMPLOYEES—The Company shall pay to each Title VII plaintiff who lost salary by reason of a suspension (grounding) on account of her weight on or after July 2, 1965, backpay for the period of said suspension (grounding). The amount of backpay shall be the amount of wages she would have earned during said period (adjusted to the purser pay scale to the extent that the class of which she is a member is awarded backpay for work performed during said period), less the amount she earned from other work during said period which would not have been performed had she not been suspended (grounded).

■■ 12. EYEGLASSES: NEGATIVE INJUNCTION—The Company shall not:

(a) Forbid female cabin attendants to wear eyeglasses in flight;

(b) Condition the employment of female cabin attendants upon their agreeing that they will not wear eyeglasses in flight;

(c) Discriminate in hiring female cabin attendants on the basis of whether they wear eyeglasses and/or would wear eyeglasses in flight.

13. EYEGLASSES: AFFIRMATIVE INJUNCTION—The Company shall:

(a) Notify all female cabin attendants that it will no longer enforce any rule prohibiting the wearing of eyeglasses in flight, and remove any contrary material from its Cabin Service Manual;

(b) Notify all female cabin attendants who signed agreements conditioning their continued employment upon not wearing eyeglasses in flight that such agreements will not be enforced.

■■ 14. HEIGHT—The Company shall not refuse to hire female cabin attendants because of their height, if they are not taller than the Company has considered acceptable in hiring male cabin attendants at any time on or after July 2, 1965.

15. LUGGAGE: NEGATIVE INJUNCTION—The Company shall not restrict its female cabin attendants' choice of luggage to be carried onto the plane, except that it may require that such luggage be in good condition and not of a size which would pose storage problems on the plane.

16. CHAIN OF COMMAND—The Company shall not establish a chain of command aboard flight which makes a female cabin attendant subordinate to a male cabin attendant with lesser system seniority, irrespective of their job titles, and the Company shall revise its existing chain of command to conform to this requirement.

17. INJUNCTION AGAINST FUTURE DISCRIMINATION IN THE FILLING OF CABIN ATTENDANT POSITIONS—The Company shall not discriminate on the basis of sex in the filling of cabin attendant positions, irrespective of the title of the position and the job content thereof, unless sex constitutes a bona fide occupational qualification for the position within the meaning of 42 U.S.C. § 2000e–2(e)(1), nor shall the Company perpetuate the effects of past discrimination by according a preference to pursers not warranted by system seniority in the filling of any cabin attendant position which may hereinafter be created.

18. REMEDYING THE PRIOR DISCRIMINATION IN THE FILLING OF PURSER VACANCIES—Counsel for the plaintiffs, counsel for the Company, and counsel for the Union shall meet promptly after the signing of this Order, together with such additional persons as each of them may designate, and shall discuss the following questions:

(a) Whether, in light of this Order, maintenance of a separate purser job

classification, with a separate set of monthly schedules to be bid separately, is desired;

(b) If so:

(i) What procedure should be adopted to determine who properly belongs on the purser list, and with what relative placement thereon, in light of the Court's findings as to discrimination in the filling of purser positions; and

(ii) What changes must be made in the criteria for determining entitlement to future placement on said list, and treatment following said placement, in light of the Court's findings of discrimination with respect to said criteria and treatment.

Not later than 60 days after the date of this Order, counsel for the parties shall report to the Court any agreement they have reached on this matter and, in the absence of agreement, they shall report to the Court their respective positions and the arguments in support of their positions. Upon receipt of such reports, the Court shall determine the appropriate remedy for the prior discrimination in the filling of purser vacancies.

19. INTEREST—With respect to all monies to be paid under the foregoing provisions of this Order, the Company shall pay six percent interest per annum from the date the violation occurred giving rise to said liability through the date upon which payment is made in accordance with this Order.

20. MECHANICS FOR PAYMENT PURSUANT TO THIS ORDER—Counsel for the plaintiffs and counsel for the Company shall meet promptly following the signing of this Order to establish procedures for determining the precise monetary amounts due to each employee pursuant to the provisions of this Order. All costs incurred in making said determinations shall be borne by the Company. The procedures adopted shall be such as to assure that payments shall be made as soon as possible, but in no event more than six months after this Order (unless the Court, for good cause shown, extends said deadline with respect to particular employees as to whom disputes have arisen concerning entitlement or computation). Any disputes as to entitlement or computation which cannot be resolved by agreement of counsel shall be referred to the Court for disposition.

21. IMPLEMENTATION — Counsel for the plaintiffs, counsel for the Company, and counsel for the Union shall be responsible, for a period of two years following this Order, to take such steps as may be necessary to assure compliance with this Order, in accordance with the procedure described in this paragraph. Any complaint by any employee or by counsel for any party that the provisions of this Order have been violated shall be discussed initially by counsel. If they unanimously agree as to the correct disposition of a complaint, they may effectuate said disposition without the need for referring it to the Court, but shall maintain a written record of said complaint and disposition. If they do not unanimously agree as to the correct disposition of a complaint any one of them may refer the matter to the Court for disposition. The Company shall pay all expenses incurred by counsel in performing the functions assigned to them in Paragraphs 20 and 21 of this Order, including the travel expenses of plaintiffs' attorneys and shall pay a reasonable attorney's fee to the plaintiffs' attorneys for their services therefor.

22. LITIGATION EXPENSES—The Company shall reimburse plaintiffs for all reasonable expenses incurred on their behalf in litigating this action. Counsel for plaintiffs and counsel for the Company shall attempt to agree upon the amount thereof. In the absence of such agreement, they shall on or before the 90th day following this Order report their respective positions to this Court, and the Court shall thereupon determine the amount thereof.

23. ATTORNEY'S FEE—The Company shall pay a reasonable attorney's fee for plaintiffs' legal representation. Counsel for plaintiffs and counsel for

the Company shall attempt to agree upon the amount thereof. In the absence of such agreement, they shall, on or before the 90th day following this Order, report their respective positions to the Court, and the Court shall thereupon determine the amount thereof.

24. RETAINED JURISDICTION— The Court hereby retains jurisdiction of this cause for the purpose of issuing any additional orders or decrees needed to effectuate, clarify, or enforce the full purpose and intent of this Order.

Judgment shall be entered accordingly.

## SUPPLEMENTAL MEMORANDUM

This matter is before the Court for entry of a Final Order with regard to damages and remedies. Findings of Fact and Conclusions of Law establishing liability herein were entered by the Court on November 12, 1973. The parties have intensively and thoroughly briefed and argued the present issues. Two matters merit brief comment.

■ The Court has not awarded liquidated damages under the Equal Pay Act. Implicit in this is a finding that Defendant has sustained its defense under 29 U.S.C. § 260. The Defendant did have reasonable grounds for belief that it was not violating the Equal Pay Act. While this Court has found as fact that the jobs of purser and stewardess are in fact equal, it was not unreasonable for the Company to have believed otherwise. Five factors support this conclusion: the traditional practice of the Company in treating the positions as unequal, the general industry practice to the same effect, the acquiescence of the stewardesses' bargaining representative in this arrangement, the absence of any grievances or even suggestions from stewardesses to the contrary prior to the present controversy, and the absence of any clear legal precedent or guideline precisely in point. The Court finds "good faith" on the part of the Defendant and this finding is not inconsistent with the earlier finding of a "willful" violation of the Equal Pay Act. See Coleman v. Jiffy June Farms, Inc., 458 F.2d 1139 (5th Cir. 1971). The Equal Pay Act violation was willful in that Defendant was fully aware of the Equal Pay Act and adopted a deliberate and knowing course of conduct despite its awareness. The Court does not find an intentional, bad faith, attempt to evade the law. The judgment of the Company that its conduct would not be found to be in violation of the Equal Pay Act has been found to be in error. The conduct of the Company in the exercise of that judgment was willful.

■ The second matter which warrants discussion is the recovery period for back-pay under Title VII. The Court has allowed a recovery period extending back two years from the date on which the charges herein were lodged with the Equal Employment Opportunity Commission. The Court has discretion to award back-pay to July 2, 1965, but has chosen to limit that award herein. The 1972 amendment to Title VII, 42 U.S.C. § 2000e–5(g), limiting back-pay liability to not more than two years prior to filing of charges with the E.E.O.C. is not applicable to this case. Nevertheless, it does indicate that Congress felt some limitation is appropriate to avoid "windfall" damage awards and to avoid harsh, and sometimes unbearable, economic burdens upon employers. The amendment also indicates that two years is an appropriate and reasonable period for measuring the adequacy of the remedy for the Plaintiffs. In light of these considerations, the Court has, in the exercise of its discretion, limited the recovery period.