**George RIOS et al., Plaintiffs,**

**v.**

**ENTERPRISE ASSOCIATION STEAMFITTERS LOCAL 638 OF U. A. et al., Defendants.**

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

**v.**

**ENTERPRISE ASSOCIATION STEAMFITTERS LOCAL 638 OF U. A. et al., Defendants.**

**Nos. 71 Civ. 847, 71 Civ. 2877.**

United States District Court,
S. D. New York.

June 27, 1975.

See also, D.C., 400 F.Supp. 993.

Dennis R. Yeager, Marilyn R. Walter, National Employment Law Project, Inc., New York City, for plaintiffs Rios, and others.

Paul J. Curran, U. S. Atty., S.D.N.Y., for plaintiff Equal Employment Opportunity Commission; Steven J. Glassman, Asst. U. S. Atty., of counsel.

Delson & Gordon, New York City, for defendants Local 638 and the Union members of JAC; Richard Brook, New York City, of counsel.

Breed, Abbott & Morgan, New York City, for defendants MCA and the employer members of JAC; Thomas A. Shaw, Jr., Kevin T. O'Reilly, New York City, of counsel.

### MEMORANDUM

BONSAL, District Judge.

The plaintiffs in *Rios v. Enterprise Association Steamfitters Local 638 of U.A.* 400 F.Supp. 983, move for back pay for members of the plaintiff classes.

This motion arises from a protracted litigation under Title VII of the Civil Rights Act of 1964, as amended. *See Rios v. Enterprise Association Steamfitters, Local 638 of U.A.,* 400 F.Supp. 983 (S.D.N.Y.1975); *United States v. Local 638, Enterprise Association of Steam, etc.,* 360 F.Supp. 979 (S.D.N.Y.1973), *aff'd but remanded in part,* 501 F.2d 622 (2d Cir. 1974); *United States v. Local 638, etc.,* 337 F.Supp. 217 (S.D.N.Y. 1972); *Rios v. Enterprise Association Steamfitters Local Union No. 638 of U. A.,* 326 F.Supp. 198 (S.D.N.Y.1971); *Rios v. Enterprise Association Steamfitters Local Union # 638 of U. A.,* 54 F.R. D. 234 (S.D.N.Y.1971).

Plaintiffs seek an award of back pay for the members of the class they represent.[1] Specifically, plaintiffs seek back pay for (1) non-white A Branch[2] members who, though qualified were denied jobs as a result of the discriminatory work referral practices fostered by defendants; (2) non-white members of the B Branch who were not admitted to the A Branch; (3) other persons qualified to be A Branch members who were either denied membership in the A Branch or were discouraged from applying for membership or from seeking employment in the steamfitting industry; (4) persons who, with on-the-job training, were capable of learning the skills necessary to be a journeyman steamfitter; and (5) unskilled persons who were denied admission to the apprenticeship program, or who, once admitted, dropped out, or who were de-

---

1. The classes are defined as: (a) "all Negro and Spanish Sur-named Americans residing in New York City and the Counties of Suffolk and Nassau in the State of New York now or at any time in the future who have the skills necessary to work as journeymen steamfitters" and (b) "all Negro and Spanish Sur-named Americans residing in New York City and the Counties of Suffolk and Nassau in the State of New York now or at any time in the future who are capable of learning such skills and who wish to obtain access to steamfitting work in New York City and said Counties." *Rios v. Enterprise Association Steamfitters Local Union # 638 of U.A.,* 54 F.R.D. 234, 237 (S.D. N.Y.1971) (Tenney, J.).

2. A Branch members of Local 638 do mainly construction work, have greater job security, earn higher hourly pay and have greater opportunity for advancement than the members of the B Branch of Local 638, whose members work in shops and do repair work. Being a member of the A Branch is a substantial aid in obtaining a job as a construction steamfitter in the territorial jurisdiction of Local 638, *i. e.,* New York County, The Bronx, Kings, Queens, Richmond, Nassau and Suffolk counties. *United States v. Local 638, etc.,* 360 F.Supp. at 984–85.

terred from applying to the apprenticeship program because of defendants' discriminatory policies and tests.

■ Plaintiffs' motion is granted to the extent that back pay will be awarded to qualified members of the plaintiff class who applied in writing for membership in the A Branch and who were discriminatorily denied admission after October 15, 1968.[3]

Back pay for others for whom it is sought will be denied since (1) damages, if any, arising from alleged discriminatory work referral practices are not ascertainable since Local 638 had no hiring hall and there are no accurate records of job openings for the period involved; (2) damages to persons who did not make formal written application to the A Branch are hypothetical; and (3) damages suffered as a result of the apprenticeship program are speculative, and equitable considerations weigh against making these back pay awards since the admission tests used by defendants were registered with the United States and New York State Departments of Labor and were adopted by defendants in good faith on the recommendation of experts.

### The Applicable Standard

Title VII provides in pertinent part: "If the Court finds that the respondent has intentionally engaged in . . . an unlawful employment practice . . ., the court may enjoin the respondent . . . and order such affirmative action as may be appropriate, which may include . . . reinstatement or hiring of employees, with or without back pay (payable by the [party] responsible for the unlawful employment practice) . . . ." 42 U.S.C. § 2000e-5(g).

■ Thus, the statute grants wide discretion to award back pay when warranted by the circumstances of the case and a court must make such determinations on a case-by-case basis. *See, e. g., Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *Kober v. Westinghouse Electric Corp.,* 480 F.2d 240 (3d Cir. 1973); *Manning v. International Union,* 466 F. 2d 812 (6th Cir. 1972), *cert. denied,* 410 U.S. 946, 93 S.Ct. 1366, 35 L.Ed.2d 613 (1973); *Schaeffer v. San Diego Yellow Cabs, Inc.,* 462 F.2d 1002, 1006 (9th Cir. 1972); *LeBlanc v. Southern Bell Telephone & Telegraph Co.,* 460 F.2d 1228 (5th Cir.), *cert. denied,* 409 U.S. 990, 93 S.Ct. 320, 34 L.Ed.2d 257 (1972). Cases which hold that an award of back pay is required by Title VII "unless special circumstances would render such an award unjust" also require a case-by-case analysis. *See Pettway v. American Cast Iron Pipe Co.,* 494 F.2d 211, 251–53 (5th Cir. 1974); *Johnson v. Goodyear Tire & Rubber Co.,* 491 F.2d 1364, 1374–77 (5th Cir. 1974); *Head v. Timken Roller Bearing Co.,* 486 F.2d 870 (6th Cir. 1973); *Bowe v. Colgate-Palmolive Co.,* 416 F.2d 711 (7th Cir. 1969).

■ In making awards for back pay, all the circumstances of the case, including ability to pay, must be taken into account. *See Thornton v. East Texas Motor Freight,* 497 F.2d 416, 421–422 (6th Cir. 1974); *United States v. Georgia Power Co.,* 474 F.2d 906, 919–22 (5th Cir. 1973). *See also Laffey v. Northwest Airlines, Inc.,* 374 F.Supp. 1382 (D.D.C.1974).

---

3. *See* discussion of the applicable statute of limitations, *infra. United Staes v. Wood, Wire and Metal Lathers International Union, Local Union 46,* 328 F.Supp. 429 (S.D.N.Y. 1971), which granted back pay to a broader group of plaintiffs than this Court finds appropriate, is distinguishable. *Wood, Wire* involved a contempt proceeding in connection with a Title VII action, which proceeding arose because the defendant union had repeatedly violated the parties' consent decree, and this procedural context was significant to the Court's determination. Also, in *Wood, Wire* the union continuously operated a hiring hall which was contemplated in devising the consent decree and the back pay remedy for its violation. Finally, the period for which back pay was awarded was less than nine months.

*Local 638.*—Local 638 was not an employer, nor was it conducting a business for profit. Local 638 is an association of workers united for their mutual protection, which is supported by dues and other assessments collected from its members to cover expenses and, from time to time, to support a strike fund. Financial data submitted by Local 638 indicates that it has limited financial resources.

██ Back pay is compensation for "tangible economic loss" to be paid by parties responsible for that loss (*see, e. g., Johnson v. Goodyear Tire & Rubber Co., supra* at 1381–82; *Robinson v. Lorillard Corp.*, 444 F.2d 791 (4th Cir. 1971); 42 U.S.C. § 2000e–5(g)). Since it was found at the trial that Local 638 engaged in a pattern and practice of discrimination against members of the plaintiff class, it is liable to provide back pay in cases of such discrimination. 360 F.Supp. at 989.

*MCA.*—Plaintiffs seek to have MCA share in the burden of providing back pay. MCA, a trade association of certain contractors in the New York area, acts only in collective bargaining negotiations between its members and Local 638. MCA does not employ steamfitters; rather, employment is done by its members. While MCA was found to have been properly made a party defendant in the *Rios* action (360 F.Supp. at 994–95), that finding did not imply that MCA was "responsible *ipso facto* for all the employment practices here found unlawfully discriminatory or . . . liable in damages to the plaintiffs in Rios. Plaintiffs have shown no specific instances of MCA discrimination. Rather, plaintiffs have demonstrated only that there has been a lack of nonwhite employment in the industry generally and that, in consequence, the industry's referral practices must be changed." *Id.* at 995–96.

*JAC.*—JAC, a joint labor-management committee composed of four members chosen by MCA and four members chosen by Local 638, has conducted the steamfitters' apprenticeship program throughout the years relevant to the actions at bar. However, JAC has "no" demonstrated responsibility for direct admissions to the A Branch of Local 638 of persons already qualified as journeymen steamfitters.

Therefore, only Local 638 is liable for back pay.[4]

### Period of Back Pay

██ As to the period for which back pay may be recoverable, Title VII does not provide a statute of limitations in actions such as the instant case which were determined by the EEOC before March 24, 1972. However, on March 24, 1972, Title VII was amended by Congress to provide that as to all cases pending before the EEOC on that date or filed thereafter, back pay liability accrues from a date no more than two years prior to the filing of the charge with the EEOC. Pub.L. 92–261, §§ 4(a), 14, codified at 42 U.S.C. § 2000e–5(g). While the case here was determined by the EEOC prior to March 24, 1972, this amendment has a bearing on Congressional intent as to the limitation to be imposed in granting back pay awards, and will be applied here. A person entitled to back pay may recover proven damages beginning on the date the discrimination occurred or beginning on October 15, 1968, which is two years prior to the filing of the complaint with EEOC by the *Rios* plaintiffs, whichever date is later. *See Laffey v. Northwest Airlines, Inc., supra* at 1390.

The termination date for computation of back pay awards is June 21, 1973, the date of this Court's order granting a permanent injunction. *See Johnson v.*

---

4. The decision herein is without prejudice to any claim a member of the plaintiff class may have against an employer (*see Albermarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). Neither MCA nor JAC is an employer, and no employers are parties to this action.

*Goodyear Tire & Rubber Co., supra* at 1379.

### Plan for Awarding Back Pay

A claimant is entitled to compensation for wages lost if he files his claim on or before December 31, 1975 and proves the following:

(1) He applied in writing for membership in Local 638's A Branch.

(2) He was discriminatorily denied admission to the A Branch after October 15, 1968. Discrimination as to a claimant for purposes of back pay will commence on the date on which the next applicant for membership in the A Branch who does not qualify as a member of the plaintiff class was admitted to the A Branch. This discrimination for purposes of back pay awards will be deemed to continue until the date claimant was admitted to the A Branch or until June 21, 1973, whichever is earlier.

(3) At the time of his application, the claimant resided in a county within the jurisdiction of Local 638, and was qualified for admission under the standards used in the implementation of this Court's Order of June 21, 1973.

(4) The claimant proves monetary damages resulting from his denial of admission to the A Branch, less any other employment income or public assistance. Monetary damages will be computed on the basis of the average monthly wage paid to members who were admitted to the A Branch on or after October 15, 1968.

Payment by Local 638 of back pay will be made after determination of all claims. At that time, upon application of Local 638, for good cause shown, the Court will review the aggregate liability for back pay awards and its impact on the financial resources of the Union, and the Court may in its discretion make a *pro rata* reduction of each claimant's award or provide for payments in installments.

The plaintiffs, the EEOC and Local 638 are invited to suggest methods to efficiently administer this plan for making back pay awards.

Settle order on notice.