Mary P. LAFFEY et al.,

v.

NORTHWEST AIRLINES, INC.,
Appellant,

Air Line Pilots Association,
Non–Aligned Party.

No. 78–1365.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 24, 1979.

Decided Oct. 1, 1980.

---

Philip A. Lacovara, Washington, D. C., with whom Peter M. Kreindler, Gerald Goldman, Washington, D. C., Robert L. Deitz, Washington, D. C., David J. Ranheim and Henry Halladay, Minneapolis, Minn., were on the brief, for appellant.

Michael H. Gottesman, Washington, D. C., with whom George H. Cohen, Robert M. Weinberg and Julia Penny Clark, Washington, D. C., were on the brief, for appellees.

Mary–Helen Mautner, Atty., Equal Employment Opportunity Commission, Washington, D. C., with whom Beatrice Rosenberg, Asst. Gen. Counsel, Equal Employment Opportunity Commission, Washington, D. C., was on the brief, for the Equal Employment Opportunity Commission, amicus curiae, urging affirmance. Issie L. Jenkins, Atty., Equal Employment Opportunity Commission, Washington, D. C., also entered an appearance for the Equal Employment Opportunity Commission, amicus curiae.

Donald S. Shire, Associate Sol., U. S. Dept. of Labor, Washington, D. C., was on the brief for the Secretary of Labor, amicus curiae, urging affirmance.

Before WRIGHT, Chief Judge, ROBINSON, Circuit Judge, and RICHEY *, United States District Judge for the District of Columbia.

Opinion for the Court filed by Circuit Judge SPOTTSWOOD W. ROBINSON, III.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Northwest Airlines, Inc. (NWA), appeals from an order of the District Court denying its motion for modification of a continuing injunction.[1] The injunction effectuates part of the relief awarded by the District Court in 1974[2] to female cabin attendants in redress of violations of the Equal Pay Act of 1963[3] and Title VII of the Civil Rights Act of 1964.[4] Our review leads us to conclude that the denial of NWA's motion rests partially on an overbroad reading of the Equal Pay Act–a general interpretation to which this court succumbed on a prior appeal.[5] We believe that it would be inappropriate, though, in the situation before us to deviate from the law of the case enunciated in our previous decision.[6] Even were this not so, however, we would still be constrained to reaffirm our former conclusion. Although we have determined that our prior analysis was faulty in some respects, we find that it leads us to the proper result since the construction we earlier gave the Equal Pay Act, to which the District Court adhered, is required on the special facts of this case.[7] We accordingly affirm.

## I. THE PRIOR LITIGATION

### A. The District Court's Dispositions

In the original proceeding, the District Court made extensive factual findings, articulated its legal conclusions and specified the relief it deemed warranted.[8] The highlights of the litigation's history, as thus established, may usefully be recounted in order to elucidate the background of the present controversy.

For many years, NWA maintained a gender–based job classification scheme resulting in employment of most male cabin attendants as pursers and all female cabin

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a) (1976).

1. Laffey v. Northwest Airlines, Inc., 481 F.Supp. 199 (D.D.C.1978), Joint Appendix (J.App.) 198–204.

2. In Laffey v. Northwest Airlines, Inc., 366 F.Supp. 763 (D.D.C.1973), the District Court entered its findings of fact and conclusions of law, and later, in Laffey v. Northwest Airlines, Inc., 374 F.Supp. 1382 (D.D.C.1974), spelled out the injunctive and monetary relief awarded. In a subsequent ruling, Laffey v. Northwest Airlines, Inc., 392 F.Supp. 1076 (D.D.C.1975), the court revised one paragraph of its 1974 order.

3. Pub.L.No. 88–38, § 3, 77 Stat. 56 (1963), 29 U.S.C. § 206(d) (1976). In most instances hereinafter, we cite this and other legislation only as codified.

4. Pub.L.No. 88–352, tit. VII, § 701 et seq., 78 Stat. 253 (1964), as amended, 42 U.S.C. § 2000e et seq. (1976).

5. Laffey v. Northwest Airlines, Inc. (Laffey I), 185 U.S.App.D.C. 322, 348 n.175, 567 F.2d 429, 455 n.175 (1976), cert. denied, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978), on remand, Laffey v. Northwest Airlines, Inc., 481 F.Supp. 199 (D.D.C.1979), discussed in Part III infra.

6. Discussed in Part III infra.

7. Discussed in Part IV infra.

8. See note 2 supra.

attendants save one as stewardesses.[9] Pursers and stewardesses performed tasks requiring equal skill, effort and responsibility,[10] but pursers were paid substantially higher salaries than stewardesses with equivalent seniority.[11] From 1967 onward, NWA in theory allowed female cabin attendants to bid for openings in the purser classification, but women could not effectively utilize that apparent opportunity. They were required to start at the bottom of the purser seniority list with no credit for service as stewardesses; the system thus relegated them to last choice in selecting schedules, susceptibility to involuntary transfer, and first to be laid off upon reductions in force.[12] To remedy the wage inequities, the District Court awarded female cabin attendants backpay[13] and enjoined NWA to pay them the same salaries received by pursers.[14]

NWA also discriminated against female cabin attendants in several other terms and conditions of employment,[15] but we need discuss only two. After 1964, male cabin attendants were provided with single rooms on layovers but female cabin attendants were paired in double rooms.[16] While, pursuant to collective bargaining agreements, company policy ostensibly was to require all cabin attendants to share double rooms,[17] it was enforced only with respect to women.[18] Moreover, a 1970 bargaining contract afforded to male cabin attendants a uniform–cleaning allowance of $13 per calendar quarter but offered female cabin attendants no such allowance.[19] The District Court granted the disadvantaged cabin attendants backpay to compensate for the deprivation of single–room occupancy and cleaning allowances,[20] and the injunction

9. *Laffey v. Northwest Airlines, Inc., supra* note 2, 366 F.Supp. at 765, 767 (Finds. 19, 20). In 1949, NWA commenced employment of some male applicants as "flight service attendants" to perform essentially the same duties as the all -female contingent of stewardesses. In a 1951 collective bargaining agreement, flight service attendants acquired the right to fill purser openings in order of seniority, and NWA never failed to fill a purser vacancy with the flight service attendant most senior. In 1957, however, NWA discontinued hiring for the position of flight service attendant and by 1970 all male cabin attendants were classified as pursers. Just prior to initiation of litigation, NWA began to employ male applicants as "stewards" to provide the same services as stewardesses at the same rates of pay. *Id.* at 766–767 (Finds. 12--21).

10. *Id.* at 789 (Concl. 4).

11. *Id.* at 788 (Find. 80).

12. *Id.* at 769 (Find. 25). When NWA anticipated purser vacancies, "its practice was to hire men off the streets, put them through its five–week cabin attendant training program, and *then* post notices of purser vacancies." *Id.* at 769 (Find. 27) (emphasis in original).

13. *Laffey v. Northwest Airlines, Inc., supra* note 2, 374 F.Supp. at 1385–1386.

14. *Id.* at 1385–1386. The District Court later abolished the separate classification of pursers and ordered all cabin attendants to bid for schedules on the basis of seniority. *Laffey v. Northwest Airlines, Inc., supra* note 2, 392 F.Supp. at 1078.

15. NWA forbade all female cabin attendants to wear eyeglasses, but did not extend that prohibition to male cabin attendants hired before September, 1971. *Laffey v. Northwest Airlines, Inc., supra* note 2, 366 F.Supp. at 774 (Find. 39(7)). Female attendants, but not male attendants, had to meet a weight standard. *Id.* at 773–774 (Find. 39(1)–(4)). NWA also required female attendants to adhere to stricter luggage requirements than those imposed on males. *Id.* (Find. 39(10–11)). Prior to 1971, NWA, while observing for male applicants a maximum height limitation of six feet, did not employ females as cabin attendants if they were taller than five feet nine inches. *Id.* (Find. 39(14)).

16. *Id.* at 774 (Finds. 39(5), (6)).

17. The provision respecting lodging accommodations in a 1975 contract was the same as that earlier appearing in a 1973 contract. Brief for Appellees at 13.

18. *Laffey v. Northwest Airlines, Inc., supra* note 2, 366 F.Supp. at 774 (Find. 39(5)(6)).

19. *Id.* at 775 (Find. 39(12)). Both the 1973 and the 1975 collective bargaining agreements specified, however, that NWA would pay the full replacement cost of selected uniform items for all cabin attendants and no cleaning allowance was provided either male or female cabin attendants. J.App. 89–90.

20. *Laffey v. Northwest Airlines, Inc., supra* note 2, 374 F.Supp. at 1387.

commands NWA to furnish single rooms on layovers and quarterly uniform–cleaning allowances to all cabin attendants.[21]

## B. *The Initial Appeal*

When, in *Laffey I*,[22] this litigation earlier was before this court, we affirmed the District Court's ruling that the wage discrimination flowing from NWA's policy of classifying men as pursers and women as stewardesses infringed both the Equal Pay Act and Title VII.[23] We also upheld the stipulations of the District Court's injunction directing NWA to furnish female cabin attendants with single rooms on layovers and a quarterly allowance for cleaning uniforms.[24] We reasoned that since NWA regularly supplied lodging to its employees the costs thereof constituted *wages* under the Equal Pay Act,[25] and consequently that "the provision of less expensive and less desirable lay–over accommodations to female employees than were provided to male employees" violated the Act.[26] Additionally, applying the Act's proscription on downward equalization,[27] we sustained the injunctive requirement that NWA afford female cabin attendants the same layover accommodations and cleaning allowances that their male counterparts had previously enjoyed.[28]

We did not affirm the District Court's judgment in toto, however. We vacated three aspects of the court's remedial order[29] and also, in light of weight restrictions newly proposed by NWA, directed the court to reconsider a ban which it had imposed on weight standards.[30] We stated that "[i]f the present regulations, applied objectively and in good faith, pass muster under Title VII, the company will become entitled to a modification of this aspect of the injunction by the District Court."[31]

## II. THE MOTION TO MODIFY

NWA moved in the District Court for a modification of the 1974 injunction that would allow implementation of policies specified in a 1975 collective bargaining agreement respecting layover accommodations and the uniform–cleaning allowance.[32]

21. The District Court's injunctive order directs:
   (c) *Lodging*: Beginning with the date of this Order, the Company shall furnish single rooms to all female cabin attendants on layovers, which shall not be inferior in quality to those heretofore provided to male cabin attendants. Thereafter, the Company shall not assign double rooms to any female cabin attendant, nor provide rooms to any female cabin attendant inferior in quality to those heretofore provided to male cabin attendants.
   (d) *Uniform Cleaning Allowance*: Beginning with the date of this Order, the Company shall provide a quarterly uniform cleaning allowance to each female cabin attendant. . . .
   *Id.* at 1385.

22. *Supra* note 5.

23. 185 U.S.App.D.C. at 346–347, 567 F.2d at 453–454. See note 49 *infra*.

24. *Id.*, 185 U.S.App.D.C. at 348–350, 567 F.2d at 455–456.

25. See Part IV *infra*.

26. *Laffey I, supra* note 5, 185 U.S.App.D.C. at 348 n.175, 567 F.2d at 455 n.175.

27. See note 63 *infra*.

28. *Laffey I, supra* note 5, 185 U.S.App.D.C. at 350–351, 567 F.2d at 457–458.

29. The vacated provisions pertained to NWA's good faith, the Title VII recovery period and eligible Title VII class members. We remanded the case to the District Court for reconsideration of these matters. *Id.*, 185 U.S.App.D.C. at 371, 567 F.2d at 478.

30. *Id.*, 185 U.S.App.D.C. at 349, 567 F.2d at 456.

31. *Id.*

32. J.App. 19. NWA submitted to the District Court a proposed order which would have amended the pertinent 1974 injunctive provisions on to lodging and uniforms to read as follows:
   (c) Lodging: The Company shall furnish rooms to all female cabin attendants on layovers in accordance with the policy established under the then–current collective bargaining agreement, which policy shall be applied without discrimination in favor of or against either male cabin attendants or female cabin attendants.
   (d) Uniforms: The Company shall furnish, to male and female cabin attendants, without discrimination in favor of or against either

That agreement merged all cabin attendants into one classification and placed them all on the purser salary scale erected in the 1973 union agreement.[33] The 1975 contract obligated NWA to furnish "lodging so that not more than two cabin attendants are assigned to one room,"[34] and to fully replace selected uniform items for all cabin attendants in lieu of a cleaning allowance.[35] NWA contends that since it now extends equal treatment to all cabin attendants in its provision of layover accommodations and cleaning allowances, it is entitled to a modification of the 1974 injunction similar to the one we instructed the District Court to consider with regard to weight restrictions.[36] NWA further argues that the proposed changes would not constitute a downward equalization in contravention of the Equal Pay Act.[37]

The District Court denied NWA's motion to modify,[38] in part because it found "no changed circumstances which would warrant modification of the injunction...."[39] Consonantly with its obligation to cleave to the legal concept of wages we expressed in

Laffey I,[40] the court also concluded that NWA's "proposed modification would be contrary to [the District] [C]ourt's intent in formulating a remedy for the statutory violations in this lawsuit and would constitute a 'downward equalization' of benefits in violation of Title VII and the Equal Pay Act."[41] The instant appeal ensued.

## III. THE LAW OF THE CASE

At the outset, we encounter a procedural objection to NWA's bid for modification. Appellees argue that the District Court's 1974 order was a final judgment,[42] and as such is alterable only if it meets the stringent requirements laid down in Civil Rule 60(b).[43] Since NWA assertedly failed to show changed circumstances of the type demanded by the rule,[44] they maintain that the District Court correctly denied the motion to modify.[45]

■ We disagree with appellees' characterization of the 1974 order as one final in nature.[46] In relevant part the order provided:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:...
> (5) ... it is no longer equitable that the judgment should have prospective application.... (emphasis supplied)

---

male or female cabin attendants any uniform cleaning allowance or uniform replacement allowance provided for in the then-current collective bargaining agreement.... J.App. 21.

**33.** J.App. 24.

**34.** J.App. 27. See note 1 supra.

**35.** J.App. 89–90.

**36.** Brief for Appellants at 20–23. See text supra at notes 30–31.

**37.** Id. at 41 n.26; Reply Brief for Appellants at 18–21.

**38.** Laffey v. Northwest Airlines, Inc., supra note 1, J.App. 198–204.

**39.** Id. at 4, J.App. 202.

**40.** See Part IV infra.

**41.** Laffey v. Northwest Airlines, Inc., supra note 1, at 4–5, J.App. 202–203 (footnote omitted).

**42.** Brief for Appellees at 25–26.

**43.** Fed.R.Civ.P. 60(b), the pertinent part of which states:

**44.** See Schildhaus v. Moe, 335 F.2d 529, 530 (2d Cir. 1964) (Rule 60(b)(5) "... is not to be read without emphasis on the important words 'no longer'; assuming that the propriety of the injunction as issued has passed beyond debate, it refers to some change in conditions that makes continued enforcement inequitable").

**45.** Brief for Appellees at 28–38.

**46.** Even if the 1974 order were final, the District Court would not, simply on that account, lack power to harmonize its still-continuing injunction with our narrowed view, see Part IV infra, of what constitutes wages under the Equal Pay Act. As Professor Moore states, "[w]hile 60(b)(5) is not a substitute for appeal and a subsequent decision in another case may not warrant a vacation or modification of a continuing injunction, a subsequent modification or extension of the law by authoritative judicial decision may render the continuance of the injunction inequitable and, if it does, a

Counsel for the plaintiffs and counsel for [NWA] shall meet promptly following the signing of this Order to establish procedures for determining the precise monetary amounts due to each employee pursuant to the provisions of this Order.... Any disputes as to entitlement or computation which cannot be resolved by agreement of counsel shall be referred to the Court for disposition.[47]

An order is final only when the court has resolved all disputed matters before it and need take no further action save to execute

the judgment.[48] The 1974 order did not meet this standard of finality because it left unadjudicated the calculations essential to ascertainment of the amount of backpay NWA owed each employee who was victimized by its Equal Pay Act and Title VII transgressions.[49] It follows that Rule 60(b) interposes no barrier.

■ Nevertheless, the District Court was entirely right in denying NWA's motion to modify the injunction since it had no power to reconsider issues laid to rest on an earlier

---

party should be granted appropriate relief from the continuing effect of the injunction." 7 J. Moore, Federal Practice ' 60.26[4] at 335–336 (1978 rev.) (footnotes omitted). See *System Fed'n No. 91, R.R. Employees' Dep't v. Wright*, 364 U.S. 642, 647, 81 S.Ct. 368, 371, 5 L.Ed.2d 349, 353 (1961); *Glenn v. Field Packing Co.*, 290 U.S. 177, 179, 54 S.Ct. 138, 78 L.Ed. 252, 254 (1933); *Coca–Cola v. Standard Bottling Co.*, 138 F.2d 788, 790 (10th Cir. 1943). Cf. *D.C. Fed'n of Civic Ass'ns v. Volpe*, 172 U.S. App.D.C. 51, 53, 520 F.2d 451, 453 (1975) (district court should have granted Rule 60(b)(1) motion to reconsider an order denying attorneys' fees where the order was inconsistent with intervening appellate decision).

**47.** *Laffey v. Northwest Airlines, Inc.*, supra note 2, 374 F.Supp. at 1389.

**48.** *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911, 916 (1945); *John Simmons Co. v. Grier Bros. Co.*, 258 U.S. 82, 88–89, 42 S.Ct. 196, 199, 66 L.Ed. 475, 479 (1922); *Taylor v. Board of Educ.*, 288 F.2d 600, 602 (2d Cir. 1961); *Johnson v. Combs*, 471 F.2d 84, 87 (5th Cir. 1972), cert. denied, 413 U.S. 922, 93 S.Ct. 3063, 37 L.Ed.2d 1044 (1973); *McNutt v. Cardox Corp.*, 329 F.2d 107, 109 (6th Cir. 1964); *Gray v. Swenson*, 430 F.2d 9, 11 (8th Cir. 1970); *Weingartner v. Union Oil Co.*, 431 F.2d 26, 27 (9th Cir. 1970), cert. denied, 400 U.S. 1000, 91 S.Ct. 459, 27 L.Ed.2d 451 (1971); *First Nat'l Bank v. Johnson County Nat'l Bank & Trust Co.*, 331 F.2d 325, 327 (10th Cir. 1964). See also *Boeing Co. v. Van Gemert*, 444 U.S. 472, 479, 100 S.Ct. 745, 750 n.5, 62 L.Ed.2d 616, 682 (1980).

**49.** Compare *H. M. Kolbe Co. v. Armgmus Textile Co.*, 315 F.2d 70, 75 (2d Cir. 1963); *Brennan v. Western Union Tel. Co.*, 561 F.2d 477, 479–480 (3d Cir. 1977), cert. denied, 434 U.S. 1063, 98 S.Ct. 1237, 55 L.Ed.2d 764 (1978); *Williams v. Ezell*, 531 F.2d 1261, 1263 (5th Cir. 1976); *Reserve Mining Co. v. EPA*, 514 F.2d 492, 532 n.78 (8th Cir. 1975). Our jurisdiction in *Laffey I*, supra note 5, did not rest on any theory that the 1974 order was appealable pursuant to 28 U.S.C. § 1291 (1970) as one final in character.

The order, while clearly nonfinal, awarded extensive injunctive relief. See Part I(A) supra. Though the grant of that relief was permanent, it rendered the order appealable under 28 U.S.C. § 1292(a)(1) (1970), *Smith v. Vulcan Iron Works*, 165 U.S. 518, 520–522, 17 S.Ct. 407, 408–409, 41 L.Ed. 810, 811 (1897); *D'Iorio v. County of Delaware*, 592 F.2d 681, 685 n.4 (3d Cir. 1978); *Lewis v. Local 203, Tobacco Workers' Int'l Union*, 577 F.2d 1135, 1138–1139 (4th Cir. 1978), cert. denied, 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 56 (1979); *Alexander v. Aero Lodge 735, Int'l Ass'n of Machinists*, 565 F.2d 1364, 1370 (6th Cir. 1977), cert. denied, 436 U.S. 946, 98 S.Ct. 2849, 56 L.Ed.2d 787 (1978); *Barrett v. Grand Trunk Western R.R.*, 581 F.2d 132, 134–135 (7th Cir. 1978), cert. denied, 440 U.S. 946, 99 S.Ct. 1423, 59 L.Ed.2d 634 (1979); *Wrist–Rocket Mfg. Co. v. Saunders Archery Co.*, 516 F.2d 846, 848–849 (8th Cir.), cert. denied, 423 U.S. 870, 96 S.Ct. 134, 46 L.Ed.2d 100 (1975), and that being so, the order was not subject to the requirements Fed.R. Civ.P. 54(b) specifies for appeals in multiple–claim and multiple–party actions. *Pang–Tsu Mow v. Republic of China*, 91 U.S.App.D.C. 324, 326–327, 201 F.2d 195, 197–198 (1952), cert. denied, 345 U.S. 925, 73 S.Ct. 784, 97 L.Ed. 1356 (1953); 10 C. Wright & A. Miller, Federal Practice § 2658 at 56-59 (1973). Moreover, the permanence and pervasiveness of the order's injunctive provisions enabled review on the merits of all interrelated features of the order save those the District Court had reserved for future adjudication. *Smith v. Vulcan Iron Works*, supra, 165 U.S. at 520–525, 17 S.Ct. at 408–410, 41 L.Ed. at 811–812; *E. P. Hinkle & Co. v. Manhattan Co.*, 165 U.S.App. D.C. 140, 143, 506 F.2d 201, 204 (1974); *D'Iorio v. County of Delaware*, supra, 592 F.2d at 685 n.4; *Alexander v. Aero Lodge 735, Int'l Ass'n of Machinists*, supra, 565 F.2d at 1370. Compare *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 287, 61 S.Ct. 229, 232–233, 85 L.Ed. 189, 193–194 (1940).

appeal.[50] Our *Laffey I* decision affirming the District Court's directive respecting lodging accommodations and uniform-cleaning allowances established the law of the case,[51] and the District Court could not deviate from our holdings therein without our leave.[52]

■ An appellate court also is normally bound by the law of the case it established on a prior appeal,[53] and for a very sound reason. If justice is to be served, there must at some point be an end to litigation; on that account, the power to recall mandates should be exercised sparingly.[54] To warrant divergence from the law of the case, a court must not only be convinced that its earlier decision was erroneous; it must also be satisfied that adherence to the law of the case will work a grave injustice.[55] In the litigation before us, we perceive no exceptional circumstances which would justify overriding the strong policy of repose normally accorded past decisions.[56] Our prior interpretation of the Equal Pay Act admittedly was overinclusive—a defect that for posterity we later cure in this opinion [57]—but that is as much as can be said. If error without more sufficed to render a decision forever vulnerable to reopening, the law of the case doctrine would lose all meaning. Here, as in another context the First Circuit once said, "we believe it would be far greater error to permit reconsideration now after denial of petitions for rehearing and certiorari. There must be an end to dispute." [58]

■ To be sure, there are exceptions to the policy of inviolability of what has already been deemed settled. The doctrine of law of the case "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." [59] Thus a court may depart from

---

**50.** *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255, 16 S.Ct. 291, 293, 40 L.Ed. 414, 416 (1895); *Greater Boston Television Corp. v. FCC*, 149 U.S.App.D.C. 322, 333, 463 F.2d 268, 279 (1971), *cert. denied*, 406 U.S. 950, 92 S.Ct. 2042, 32 L.Ed.2d 338 (1972); *Mid–Eastern Elec., Inc. v. First Nat'l Bank*, 455 F.2d 141, 143 (4th Cir. 1970); *Lehrman v. Gulf Oil Co.*, 500 F.2d 659, 663 (5th Cir. 1974), *cert. denied*, 420 U.S. 929, 95 S.Ct. 1128, 43 L.Ed.2d 400 (1975); *Independent Nail & Packing Co. v. Perry*, 214 F.2d 670, 672-673 (7th Cir. 1954); *Paull v. Archer–Daniels–Midland Co.*, 313 F.2d 612, 617 (8th Cir. 1963); *Atlas Scraper & Eng'r Co. v. Pursche*, 357 F.2d 296, 298 (9th Cir.), *cert. denied*, 385 U.S. 846, 87 S.Ct. 47, 17 L.Ed.2d 76 (1966).

**51.** For a fuller discussion of the law of the case doctrine, see 1B J. Moore, Federal Practice ¶ 0.404[10] (1978 rev.).

**52.** See *id.* at 571–572 and cases cited *supra* note 50.

**53.** *Schwartz v. NMS Indus., Inc.*, 575 F.2d 553, 554–555, (5th Cir. 1978); *White v. Murtha*, 377 F.2d 428, 431–432 (5th Cir. 1967); *Poster Exchange, Inc. v. National Screen Serv. Corp.*, 362 F.2d 571, 574 (5th Cir.), *cert. denied*, 385 U.S. 948, 87 S.Ct. 323, 17 L.Ed.2d 227 (1966); *James Burrough, Ltd. v. Sign of Beefeater, Inc.*, 572 F.2d 574, 577 (7th Cir. 1978).

**54.** *White v. Higgins*, 116 F.2d 312, 317 (1st Cir. 1940); *Estate of Iverson v. Commissioner*, 257 F.2d 408, 409 (8th Cir. 1958); *United States v. Fullard–Leo*, 156 F.2d 756, 757 (9th Cir. 1946), *aff'd*, 331 U.S. 256, 67 S.Ct. 1287, 91 L.Ed. 1474 (1947).

**55.** *Naples v. United States*, 123 U.S.App.D.C. 292, 293, 359 F.2d 276, 277 (1966); *Petitions of Kinsman Transit Co.*, 388 F.2d 821, 825 n.9 (2d Cir. 1968); *Carpa, Inc. v. Ward Foods, Inc.*, 567 F.2d 1316, 1320 (5th Cir. 1978); *Petition of United States Steel Corp.*, 479 F.2d 489, 494 (6th Cir.), *cert. denied*, 414 U.S. 859, 94 S.Ct. 71, 38 L.Ed.2d 110 (1973); 1B J. Moore, Federal Practice ¶ 0.404[1] at 401 (1978 rev.):

> [A] court is not inexorably bound by its own precedents, but in the interests of uniformity of treatment to litigants, and of stability and certainty in the law will follow the relevant rule of law which it has established in earlier cases, unless clearly convinced that the legal rule was originally erroneous or is no longer sound because of changed conditions and that more good than harm would come from departing from precedent.

(footnote omitted).

**56.** See *Greater Boston Television Corp. v. FCC*, *supra* note 50, 149 U.S.App.D.C. at 332, 463 F.2d at 278, citing *Hines v. Royal Indem. Co.*, 253 F.2d 111, 114 (6th Cir. 1958).

**57.** See Part IV *infra*.

**58.** *Legate v. Maloney*, 348 F.2d 164, 166 (1st Cir. 1965).

**59.** *Messenger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152, 1156 (1912) (citations omitted).

the law of the case to correct clerical mistakes, to clarify its opinion or mandate, to remedy fraud on the court or other misconduct, to avoid divergent results in cases pending simultaneously, or to minister to other similar aberrations.[60] But the instant litigation presents none of these occasions, nor any other circumstance capable of generating injustice from adherence to the law of the case in this instance. We thus agree with the District Court that modification of the injunction was unwarranted.[61]

## IV. THE EQUAL PAY ACT

Our concern with *Laffey I's* disposition of the questions on layover accommodations and cleaning allowances has not disappeared at this point, however. Although we are not constrained to tamper with these rulings for NWA's benefit, the claim that we misread the Equal Pay Act prompted us to restudy these issues in the interest of soundness of the law for the future. After an intensive effort in that direction, we find that we did give the statutory term "wage" a scope somewhat too large. But we also discovered that *Laffey I's* holdings

on NWA's layover accommodations and cleaning allowances were fully accurate on their own peculiar facts. So it was that this additional ground for affirmance of the District Court came to light.

The Equal Pay Act[62] required the District Court, in framing relief from sex-based wage differentials, to avoid equalization downward.[63] On that basis the court, in its 1974 order, directed NWA to provide female cabin attendants with the same lodging accommodations and uniform-cleaning allowances that it previously had afforded male cabin attendants.[64] In *Laffey I*, we affirmed this aspect of the order.[65]

■ The validity of this application of the Act's mandate for upward equalization turns on the interpretation properly to be ascribed to the statutory term "wage"[66] in its relation to the costs of the accommodations and allowances. NWA argues that its expenditures for these purposes are not wages, and thus that we erred when on the prior appeal we foreclosed the possibility of equalization of accommodations and allowances downward.[67] As was implicit in *Laf-*

---

**60.** *Greater Boston Television Corp. v. FCC, supra* note 50, 149 U.S.App.D.C. at 332–333, 463 F.2d at 278–279.

**61.** See text *supra* at note 39.

**62.** The Act provides:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex. 29 U.S.C. § 206(d)(1) (1976). This legislation was enacted in 1963 as an addition to the Fair Labor Standards Act of 1938, Act of June 25, 1938, ch. 676, 52 Stat. 1060, as amended, 29 U.S.C. § 201 *et seq.* (1976)....

**63.** The Equal Pay Act specifies that

an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

29 U.S.C. § 206(d)(1) (1976). Thus the policy of the Act " '... is not to drag down men workers to the wage levels of women, but to raise women to the levels enjoyed by men in cases where discrimination is still practiced.' " *Corning Glass Work v. Brennan*, 417 U.S. 188, 207, 94 S.Ct. 2223, 2234, 41 L.Ed.2d 1, 17 (1974) (quoting Representative Dwyer) (footnote omitted).

**64.** See text *supra* at notes 17–21.

**65.** See text *supra* at notes 24 28. Our earlier discussion of the issue on layover accommodations appears in *Laffey I, supra* note 5, 185 U.S.App.D.C. at 348 n.175, 567 F.2d at 455 n.175. And see note 72 *infra*.

**66.** See note 63 *supra*.

**67.** Brief for Appellant at 32- 43.

*fey I,*[68] while the Equal Pay Act does not define wages, the legislation it amended–the Fair Labor Standards Act of 1938[69]–does.[70] Under the Fair Labor Standards Act, we again note, the " '[w]age' paid to an employee includes the reasonable cost . . . to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees. . . ."[71] Since NWA "customarily furnished" lodging accommodations and uniform–cleaning allowances to selected classes of employees, as distinguished from reimbursing those employees for expenditures for lodging and cleaning services not regularly supplied, we felt in *Laffey I* that outlays for these items were wages within the meaning of the Equal Pay Act.[72] After a more penetrating analysis of the administrative regulations implementing the statutory text, we now find this interpretation to be overbroad. Our contin-

ued study has revealed that as a general rule provision of accommodations and funds for the cleaning of uniforms will not constitute wages. Nevertheless, we find that in the case before us the single rooms and cleaning allowances really were provided primarily for the benefit of the employees receiving them, and that for that reason they constituted a part of the employees' wages for purposes of that Act.

■ To enable determination of a "wage"–"the reasonable cost . . . of furnishing . . . facilities . . . customarily furnished by [the] employer to his employees"[73]–the Fair Labor Standards Act authorizes the Administrator of the Wage and Hour Division of the Department of Labor to ascertain the fair value of such facilities for defined classes of employees and in defined areas.[74] In exercising this function, the Administrator has promulgated a regulation stating:

68. See *Laffey I, supra* note 5, 185 U.S.App.D.C. at 348 n.175, 567 F.2d at 455 n.175.

69. See note 62 *supra.*

70. In a regulation interpreting the Equal Pay Act, the Administrator of the Wage and Hour Division of the Department of Labor has explained:

> The term "wages" used in section 6(d)(1) of the [Equal Pay] Act is considered to have the same meaning it has elsewhere in the [Fair Labor Standards] Act. As a general rule, in determining compliance with the equal pay provisions, the wages paid by the employer will be calculated pursuant to the same principles and procedures as have traditionally been followed in calculating such wages for purposes of determining compliance with the minimum wage provisions of the Act.

29 C.F.R. § 800.110 (1979). Constructions of this type are appropriate since Congress has made clear that the Administrator should, when helpful in applications of the Equal Pay Act, rely on definitions and interpretations already utilized in applications of the Fair Labor Standards Act. The House Report on the Equal Pay Act stated:

> The bill (H.R. 6060) would add one additional fair labor standard to the act; namely, that employees doing equal work should be paid equal wages, regardless of sex.
> Because of the long history and experience of Government and business and workers with the Fair Labor Standards Act, a simple

> expansion of that act to include the equal pay concept offers the most efficient and least difficult course of action.
> The Fair Labor Standards Act has been on our statute books now for almost a quarter of a century. . . .
> Such utilization serves two purposes: First, it eliminates the need for a new bureaucratic structure to enforce equal pay legislation; and second, compliance should be made easier because both industry and labor have a long–established familiarity with existing fair labor standards provisions.

H.R.Rep. No. 309, 88th Cong., 1st Sess. 2 (1963), U.S.Code Cong. & Admin.News 1963, pp. 687, 688.

71. 29 U.S.C. § 203(m) (1976).

72. *Laffey I, supra* note 5, 185 U.S.App.D.C. at 348 n.175, 567 F.2d at 455 n.175. While our discussion there focused only on whether the lodging accommodations represented wages, our logic necessarily embraced the uniform–cleaning allowances. Indeed, shortly thereafter, we stated that the District Court was bound to require upward equalization with respect to uniform allowances as well as salaries and lodging–on the theory that to do otherwise would contravene the Act. *Id.* 185 U.S.App. D.C. at 350–351, 567 F.2d at 457–458.

73. See text *supra* at note 71.

74. 29 U.S.C. § 203(m) (1976).

The cost of furnishing "facilities" found by the Administrator to be *primarily for the benefit or convenience of the employer* will not be recognized as reasonable and may not therefore be included in computing wages.

The following is a list of facilities found by the Administrator to be primarily for the benefit or convenience of the employer. The list is intended to be illustrative rather than exclusive: (i) Tools of the trade and other materials and services incidental to carrying on the employer's business; (ii) the cost of any construction by and for the employer; (iii) *the cost of uniforms and of their laundering, where the nature of the business requires the employee to wear a uniform.*[75]

Another regulation supplies additional examples of expenses that usually are incurred for the benefit of the employer, including:

The actual or reasonably approximate *amount expended by an employee, who is traveling "over the road" on his employer's business,* for transportation (whether by private car or common carrier) and *living expenses away from home,* other travel expenses, such as taxicab fares, incurred while traveling on the employer's business.[76]

In recognition of the Administrator's statutory role in the area of wage regulation and the expertise he has developed

therein, we must accord deference to the construction he has placed on the congressional language defining "wage." [77] Exclusion from the concept of wages, for equal-pay purposes, of lodging and other facilities and services that primarily benefit the employer rather than the employee is indisputably a reasonable interpretation, and one that comports with everyday usage of "wage." It does not suffice, as we thought in *Laffey I,* that the facility or service merely have been "customarily furnished" by the employer; *it must also primarily serve the interest of the employee.* That we wish to make clear for the future.

This does not mean that we erred in holding in *Laffey I* that the expenses of the layover accommodations and cleaning allowances here involved were wages. The regulations elucidating the meaning of "wage" for Equal–Pay–Act purposes themselves acknowledge that they are to be applied only "as a general rule." [78] In the case at bar, we are unable to escape the conclusion that the particular type of lodging furnished male cabin attendants–a single room–was a concession primarily for the benefit of the employee. As the Secretary of Labor, participating as amicus curiae, convincingly argues,[79] providing double rooms conserves the employer's pocketbook, thus fostering his business interests, but the expense of single rooms manifestly is incurred principally for the convenience and added comfort of the employee. The single room is a desirable perquisite for which, we

---

**75.** 29 C.F.R. § 531.3(d)(1), (2) (1979) (emphasis supplied).

**76.** 29 C.F.R. § 778.217(b)(3) (1979) (emphasis supplied). Whether the employer provides the lodging or cleaning or reimburses the employee for the expense thereof will not affect the decision on whether the cost of the item is part of the employee's wage. The test in either case is the same: facilities and services furnished, and reimbursements therefor, by the employer are not components of the wage if they are primarily for the benefit of the employer. See 29 C.F.R. § 778.217(a) (1979).

**77.** *Laffey I, supra* note 5, 185 U.S.App.D.C. at 342, 567 F.2d at 449; *Hodgson v. Corning Glass Works,* 474 F.2d 226, 232 (2d Cir. 1973), aff'd, 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1

(1974); *Usery v. Allegheny County Inst. Dist.,* 544 F.2d 148, 153 n.3 (3d Cir. 1976), cert. denied, 430 U.S. 946, 97 S.Ct. 1582, 51 L.Ed.2d 793 (1977); *Brennan v. Prince William Hosp. Corp.,* 503 F.2d 282, 287–288 n.5 (4th Cir. 1974), cert. denied, 420 U.S. 972, 95 S.Ct. 1392, 43 L.Ed.2d 652 (1975); *Brennan v. City Stores, Inc.,* 479 F.2d 235, 239–240 (5th Cir. 1973); *Homemakers Home & Health Care Servs., Inc. v. Carden,* 538 F.2d 98 (6th Cir. 1976).

**78.** See note 70 *supra* & text following note 72 *supra.*

**79.** Supplemental Memorandum for the Secretary of Labor as Amicus Curiae at 3.

note, NWA's employees recently bargained in vain.[80] Indeed, NWA has actively resisted the persistent effort of the employees' union to secure a contractual guaranty of single rooms on layovers.[81] We can view NWA's stance in these negotiations only as an endeavor to avoid a financial burden.

Similarly, we cannot accept NWA's thesis that the uniform–cleaning allowance, which earlier was given only to NWA's male cabin attendants, was intended primarily as a boon to the employer. Had the allowance benefited the employer rather than the employee, NWA obviously would have extended it to female cabin attendants as well. While a cleaning allowance provided all employees would not ordinarily amount to a wage, the strictly sex–based limitation on its availability exposes it as simply another supplement to male salaries.

It follows that the District Court correctly denied NWA's motion for modification of the 1974 order. The law of the case doctrine rendered it impregnable to change save in this court, and then only on grounds absent here. To boot, the request for modification must in any event fail on the merits. The order appealed from is accordingly

*Affirmed.*

---

**80.** Brief for Appellees at 14.　　**81.** Id.