Mary P. LAFFEY, et al., Plaintiffs,

v.

NORTHWEST AIRLINES, Defendant.

Civ. A. 2111–70.

United States District Court,
District of Columbia.

Oct. 25, 1982.

See also D.C., 572 F.Supp. 354.

Michael H. Gottesman, Dennis D. Clark, Washington, D.C., for plaintiffs.

Phillip Lacovara, Gerald Goldman, Washington, D.C., for Northwest Airlines, Inc.

Roger C. Hartley, O'Donoghue & O'Donoghue, Washington, D.C., for Air Line Pilots Ass'n.

## MEMORANDUM OPINION

AUBREY E. ROBINSON, Jr., Chief Judge.

This Title VII and Equal Pay Act case is in the final phases of litigation in this Court. After more than eleven years, a trial on the merits, and several rounds of appeals, only three issues remain before this Court: First, whether a final judgment may be entered without specifying the amount of attorney fees ultimately to be awarded. Second, whether "retroactive" wage payments made by Defendant in 1976 pursuant to a belatedly-negotiated collective bargaining agreement covering the years 1974 and 1975 eliminate Defendant's liability for both backpay and liquidated damages for those years; and Third, whether the rate of post-judgment interest is governed by the new federal interest statute or by this Court's Order of April 3, 1974, which set the post-judgment interest rate in this action at six percent. As the parties are unable to resolve these matters by agreement, the Court enters the following Memorandum Order.

### I. Entry of Final Judgment on the Merits

The parties to this action agree upon the form of final judgment, but disagree sharply whether the judgment must specify the amount of attorney fees and litigation expenses to be awarded the successful plaintiffs. Citing *White v. New Hampshire Department of Employment Security*, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982) and the public interest in prompt remedy of Title VII and Equal Pay Act violations, Plaintiffs urge the Court to enter final judgment as soon as all merits issues are resolved, without awaiting determination of the amount of attorney fees. Defendant opposes the motion, claiming

that a decision awarding an indeterminate amount of attorney fees is not a final judgment (the question not having been squarely addressed in *White*), and suggesting that the parties undertake to negotiate the amount of fees.

After several months of inconclusive negotiations between the parties on the attorney fees issue, the Court concludes that agreement, if it is forthcoming at all, is not imminent. Entry of final judgment is therefore appropriate, without regard to the "unfinished business" of attorney fees. *See White v. New Hampshire, supra.* As the Court noted in *White*, a request for attorney's fee "raises legal issues collateral to the main cause of action."

> Regardless of when attorney's fees are requested, the court's decision of entitlement to fees will therefore require an inquiry separate from the decision on the merits—an inquiry that cannot even commence until one party has "prevailed." Nor can attorney's fees fairly be characterized as an element of "relief" indistinguishable from other elements. Unlike other judicial relief, [attorney's fees] are not compensation for the injury giving rise to an action. Their award is uniquely separable from the cause of action to be proved at trial.

*White, supra,* at 451–452, 102 S.Ct. at 1166 (footnotes omitted). The Court perceives no impediment to entry of final judgment at this time. To the extent that it becomes necessary to do so, this Court can litigate the attorney fee question with reasonable dispatch and, as *White* suggests, thereby permit the appeal from the fee award "to be considered together with any appeal from a final judgment on the merits." *Id.* at 454, 102 S.Ct. at 1168 (footnote omitted).[1]

Therefore, final judgment shall be entered in this action on November 30, 1982,

---

**1.** Indeed, in its opposition to Plaintiff's Motion for Instruction Respecting Entry of Final Judgment on the Merits, Defendant suggests that "no appeal in this case is likely to be heard until all the issues are ready to be submitted to the Court of Appeals."

approximately forty days from the date of this order.[2]

## II. Backpay Due Equal Pay Act Plaintiffs

The parties' dispute concerning the amounts due the "Equal Pay Act" Plaintiffs derives from the following chronology of events. On November 12, 1973 this Court entered a finding that female stewardesses and male pursers were performing "equal work," and that Defendant was violating both Title VII and the Equal Pay Act by paying stewardesses less than pursers. *Laffey v. Northwest Airlines, Inc.*, 366 F.Supp. 763, 789 (D.D.C.1973). Shortly thereafter, at the end of 1973, the collective bargaining agreement between Defendant and Plaintiffs' union expired. For the next two years, pursuant to what Defendant terms the "customary collective bargaining practices in the airline industry," Plaintiffs continued working under the terms of the expired contract while a new contract was being negotiated. On April 3, 1974 the Court entered its remedial order, directing Defendant to equalize the wages and ordering backpay in the amount of the differential between stewardess and purser salaries. *Laffey v. Northwest Airlines*, 374 F.Supp. 1382 (D.D.C.1974). The Order specified that backpay would continue to accrue until salaries were equalized, but declined to award liquidated damages.

The April 3 order was stayed pending appeal, and most of it was ultimately affirmed. The Court's finding concerning liquidated damages, however, was reversed. *Laffey v. Northwest Airlines* ("Laffey I"), 567 F.2d 429, 465 (D.C.Cir.1976). On December 20, 1975 (effective January 31, 1976) Defendant entered into a new collective bargaining agreement with the union, including a provision for "retroactive wage payments" that equalized the salaries of stewardesses and pursers for 1974 and 1975. On November 21, 1980, following a remand by the Court of Appeals, this Court determined that liquidated damages were mandatory under the circumstances of the case and ordered their payment in an additional amount equal to the backpay previously ordered.[3]

The dispute before the Court centers on Defendant's retroactive wage payments for the years 1974 and 1975. The parties agree that the retroactive payments are credited against Defendant's backpay liability, but disagree on whether Defendant is liable for liquidated damages equal to the retroactive payments. Plaintiff claims that, by its terms, the 1980 Order requires liquidated damages in an amount "equal to the previously ordered backpay," without exception for situations in which Defendant chose to remit the backpay without awaiting final judgment. In any event, Plaintiff asserts that liquidated damages are mandatory because liability attached at the time of the violation, even though it was later cured. The issue, as Defendant frames it, is the effect of a contractually agreed-upon retroactive wage adjustment in determining the amount of differential between purser's wages and stewardess' wages. Defendant contends that the retroactive payments were not in partial satisfaction of the Court's judgment, but a "standard feature of labor agreements in the airline industry." Defendant argues that retroactive wages paid pursuant to a collective bargaining agreement relate back to the date on which the parties would have been paid if they reached agreement on a new contract prior to the expiration of the old agreement. Thus, the retroactive payments are treated as having been received when earned and they eliminate any differential *pro tanto*. Since there is no differ-

---

**2.** The parties have requested the forty day delay to enable them to perform the complex computations necessary to determine the exact amount due each cabin attendant.

**3.** The Court concluded that Defendant had "failed to satisfy its burden of showing good faith and reasonable grounds for believing that it was in compliance with the Equal Pay Act by paying stewardesses less than pursers."

ential, there are no backwages owing, and there can be no liquidated damages to pay.[4]

After carefully considering the papers submitted by the parties and the relevant (albeit scarce) case law, the Court concludes that Defendant's retroactive pay increase did not obliterate its obligation to pay liquidated damages equal to the amount of backpay ordered.

It is clear that an employee cannot waive its right to liquidated damages, even when such waiver is in compromise of a *bona fide* dispute, e.g., over the coverage of the Act. *Schulte v. Gangi*, 328 U.S. 108, 66 S.Ct. 925, 90 L.Ed. 1114 (1946), *Brooklyn Bank v. O'Neil*, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945). The reason lies in the fact that liquidated damages are not punitive but compensatory, intended to compensate a worker for the retention of his pay, which might result in damages too obscure and difficult of proof to be compensated for other than by liquidated damages. *Brooklyn Bank, supra*, at 707, 65 S.Ct. at 902. The Court acknowledged that "It is quite true that the liquidated damage provision acts harshly upon employers whose violations are not deliberate but arise from uncertainties or mistakes as to coverage," *Schulte, supra*, 328 U.S. at 115, 66 S.Ct. at 928, but concluded that the compensatory goal of the provision was sufficient to override that harshness.

It is equally clear that the rights secured to employees by the Equal Pay Act cannot be collectively bargained away. 29 U.S.C. § 206(d)(2); *Equal Employment Opportunity Commission v. American Telephone and Telegraph Company*, 365 F.Supp. 1105 (E.D.Pa.1973), *aff'd* 506 F.2d 735 (3d Cir.1974). Since Defendant cannot interpose an explicit agreement with its employees as a defense to Equal Pay Act liability, neither should it be able to point to the "customary collective bargaining prac-

tices in the airline industry" and the parties' implicit assumptions [5] to avoid its liquidated damages obligations.

Neither the regulations nor the case cited by Defendant compels a different conclusion. First, Defendant points to general regulations—29 C.F.R. §§ 800.110 and 800.-113—to the effect that an employee's wages under the Equal Pay Act include "*all payments* made to or on behalf of the employee as remuneration for employment" and "payments ... agreed to be paid *under 'the employment contract.*'" (emphasis added). These regulations cannot be interpreted to refer to *any* payment ever made, regardless of how tardy. Otherwise, any belated payment of wages would be considered a remunerative payment made "on behalf of an employee" and would operate retroactively to negate existing violations. The case law forbids such a result.

Second, Defendant notes that the term "wages" as it is used in the Equal Pay Act has the same meaning as under the Fair Labor Standards Act (FLSA). 29 C.F.R. § 800.110. Defendant then observes that an FLSA regulation, 29 C.F.R. § 778.303, specifically provides for determining the existence and extent of a differential by including retroactive payments made under a collective bargaining agreement that fixes the wage rates for an earlier period. Unfortunately, the regulation does not, as Defendant suggests, "authoritatively and definitively" resolve the issue. Section 778.303 deals with calculation of overtime payments following a retroactive pay increase. It provides that, when an employer grants a retroactive wage increase, it must also make retroactive overtime payments to reflect the amount of the increase. The regulation does not deal with the situation before this Court, where there is an underlying unlawful differential in wages. Thus, the fact that it recognizes the retro-

---

4. Defendant concedes that it continues to owe backpay for the period between January 1, 1974 and January 31, 1976 to the extent that the "retroactive payments" were less than the total backpay due for that period under the terms of this Court's 1974 Order.

5. Defendant asserts that "no one contemplated that the wages received in 1974 and 1975 were the actual wage rates."

active effect of a later pay increase has no bearing on the issue before the Court.

*Vigen v. Great Lakes Dredge & Dock Company*, 79 F.Supp. 410 (N.D.Ohio 1947) is also of little solace to Defendant. *Vigen* was an action to recover overtime compensation and liquidated damages; the Court declined to award liquidated damages for a five month period during which the parties were negotiating a new contract, since the contract (when it was finally agreed upon) was made retroactive and payments were made accordingly. Assuming that the facts in *Vigen* were similar to those here, the reasoning of that case is inadequate to support the result Defendant seeks. *Vigen* refused liquidated damages for the negotiation period on the ground that imposing such liability would "be contrary to the intention of the parties and to established principles of law." As noted above, however, the intention of the parties does not affect the employer's liquidated damages liability. *See Schulte, supra.* And the established principles of law—to the extent they suggest any resolution of this issue—argue in favor of Defendant's liability for liquidated damages. The statute cited in *Vigen* as the "established principle of law" is 29 U.S.C. § 260, which establishes the good faith defense to liquidated damages under the FLSA. Defendant's good faith is not an issue here; this Court has already ruled that liquidated damages were mandatory under the circumstances of the case. Those "circumstances" include the following facts: (1) On November 12, 1973 this Court entered a finding that Defendant's wage scale violated the Equal Pay Act. (2) The contract establishing that wage scale expired December 31, 1973, almost one and one-half months after that finding. (3) The wage scale was perpetuated for another two years during the negotiation of the new contract. Thus, this Court does not find *Vigen* controlling. What is controlling is the compensatory purpose of the liquidated damages provision and the general rule that belated payments do not eliminate an employer's Equal Pay Act liability. The

Court concludes that Plaintiffs are entitled to receive liquidated damages equal to the full amount of backpay ordered by this Court, including liquidated damages equal to that portion of the backpay award that Defendant satisfied by means of its retroactive payments.

### III. Post-Judgment Interest

[5] Since final judgment in this action will be entered after the effective date of the new federal interest statute,[6] the parties concede that the new statute normally would apply to this action. However, Defendant claims that the "law of the case"—embodied in this Court's April 3, 1974 Order setting post-judgment interest at six percent—and the "mandate" doctrine prevent application of the new statute to this action. The "law of the case" and "mandate" doctrines are similar in that both are means of achieving finality, but neither doctrine confines this Court to the six percent figure contained in the April 3, 1974 Order.

 The "law of the case" doctrine is not a limitation on the Court's power, but is an expression of the courts' general practice to avoid reopening issues which have been fully litigated at an earlier stage in the proceedings. *Laffey v. Northwest Airlines*, 642 F.2d 578, 585 (D.C.Cir.1980) ("Laffey II"). Departure from a prior ruling is warranted to

> correct a clerical error, to clarify an opinion or mandate, to remedy fraud on the court or other misconduct, to avoid divergent results in cases pending simultaneously or to avoid other similar aberrations.

*Id.*, at 586. Slavishly adhering to the six percent post-judgment interest awarded in 1974 in the face of eight years of delay and a new federal statute would be such an aberration. Plaintiffs in this action, in which judgment will be entered on November 30, 1982, would receive only six percent post-judgment interest, whereas other

---

6. *See* § 302(a) of the Federal Courts Improvement Act of 1982, 96 Stat. 25 (April 2, 1982).

The Act, amending 28 U.S.C. § 1961, was effective October 1, 1982.

plaintiffs, whose cases lack the torturous history of *Laffey*, but whose final judgment is entered at about the same time, would receive approximately twice that amount. Given the purpose of post-judgment interest—to compensate for delay in receipt of court awarded payments—that result would be intolerable. Moreover, the existence of an intervening change of law is generally regarded as an exception to the "law of the case" doctrine. *See, e.g., Naples v. United States,* 359 F.2d 276, 277–278 n. 1 (D.C.Cir.1966) (supervening court decisions); *Banco Nacional de Cuba v. Farr,* 383 F.2d 166, 178 (2d Cir.), *cert. denied,* 390 U.S. 956, 88 S.Ct. 1038, 19 L.Ed.2d 1151 (1967) (new statute).

This Court's October 1981 Order, declining to adjust the post-interest rate, was entered under a very different factual setting. At the time Plaintiffs filed their motion, there was no new interest statute; the maximum interest allowable under the applicable law was precisely what the Court had already ordered. Faced with only the possibility that some legislative change might be forthcoming, this Court determined that there was "no basis" for departing from the law of the case. The intervening legislative change provides such a basis.

The mandate doctrine is also no barrier to adjustment of the interest rate. The doctrine prohibits a district court from departing from appellate instructions without special leave. *Greater Boston Television Corporation v. F.C.C.,* 463 F.2d 268, 279 (D.C.Cir.1971). Although the district court has no power to reconsider issues laid to rest on an earlier appeal, the doctrine is not without exception: "[S]o long as the case is *sub judice* a federal court must apply a new and supervening rule of ... federal law to the decision of federal issues, when the new legal rule is valid and applicable to the issues of the case." 1B Moore's Federal Practice ¶ 0.404[10]. (Where an appellate court's mandate requires further proceedings in the inferior court, inferior court should apply the supervening rule.)

Accordingly, The Court concludes that post-judgment interest in this action shall be computed in accordance with the formula set forth in the new Federal interest statute.